ROBERTS et al., Appellants, v. CRUME et al.

Division Two, March 31, 1903.

1. **Will:** INTENTION: EXTRINSIC EVIDENCE. Extrinsic evidence is not admissible for the purpose of showing the testator's intention unless some provision or clause of the will is so ambiguous in the language used as to make that intention doubtful; then his situation, the objects of his bounty and all surrounding facts may be considered in arriving at his true intention.

2. ———: ———: HEIRS: LIFE ESTATE. A testator gave his real estate to his daughter "and to her heirs," "subject to the following conditions: she and her heirs must care for my son John during the period of his natural life, he to live with her and she to furnish him at all times with such proper and reasonable accommodations, support and clothing as is suitable to his condition in life; and in case my daughter should at any time fail in the performance of this condition, then I direct that the rents of said lands be set apart to the use of my said son for his support and maintenance during the remainder of his natural life." *Held,* first, that the word "heirs" can not be held to mean children, but to be used in the same sense as if the gift had been made by deed; second, the will devised the fee, not a life estate merely to the daughter, and a sale by her and her husband conveyed the title.

3. ———: SUBSEQUENT CONDITION: FORFEITURE. The condition in said will to support the son was not a subsequent one, for such a condition, to defeat or work a forfeiture of vested estates, must be created in express terms or by clear implication, and nothing is to be found in these words to indicate any such intention.

4. ———: CONDITION SUBSEQUENT. Where conditions subsequent are relied upon to work a forfeiture of an estate in land, if not complied with, it is usual to insert a clause of re-entry or reverter in the instrument conveying the property.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*Rechow & Pufahl* for appellants.

(1)   The testator's understanding of the words used in his will must be adopted in construing the will without reference to lexicographers or adjudicated cases.   Dugans v. Livingstone, 15 Mo. 234; Reinders v. Koppelman, 94 Mo. 343; Small v. Field, 102 Mo. 129; Garth v. Garth, 139 Mo. 465; Long v. Timms, 107 Mo. 519.  (2) The testator understood that the word "heirs" as used in the will meant "children," and the words should be so construed.   Waddell v. Waddell, 99 Mo. 345; Chew v. Keller, 100 Mo. 369; Maguire v. Moore, 108 Mo. 273; 1 Leading Cases in the American Law of Real Property, p. 97; Watson v. Watson, 110 Mo. 168. (3)   Courts shall pay due regard to the intention of the testator in the construction of wills.   R. S. 1899, sec. 4650; 1 Leading cases in American Law of Real Property, p. 96; Nichols v. Boswell, 103 Mo. 157; Murphy v. Carlin, 113 Mo. 117; McMillan v. Farrow, 141 Mo. 62; Cross v. Hoch, 149 Mo. 335; Briant v. Garrison, 150 Mo. 659.   And in arriving at such intention, the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution, may be taken into consideration, and the court, as far as possible, should put itself in his place. Murphy v. Carlin, 113 Mo. 117; McMillan v. Farrow, 141 Mo. 63; Schorr v. Carter, 120 Mo. 415.   (4) In case of a devise an estate will be held to be one in tail, whatever may be the words of limitation.   Tiedeman on Real Property, sec. 47.   (5) Under the terms of the will all land owned by Alpheus Leonard was devised to Mary I. Roberts and her heirs, subject to the trust that she or her heirs provide for the feeble-minded son, John.   No personal liability attached to Mary I. Roberts upon her failure to provide for him.   In such case the devisee takes only a life estate.   Tiedeman on Real Property, sec. 37, p. 25.   (6) It was clearly the intention of Alpheus Leonard to create in Mary I. Roberts a life estate only, with remainder in fee to her "children," subject to the charge that they provide for his

feeble-minded son, John. Bean v. Kenmuir, 86 Mo. 666; Lewis v. Pitman, 101 Mo. 286; Redman v. Barger, 118 Mo. 569; Evans v. Folks, 135 Mo. 399; McMillan v. Farrow, 141 Mo. 58; Cross v. Hoch, 149 Mo. 330; Walton v. Drumtra, 152 Mo. 493; Schorr v. Carter, 120 Mo. 411.

*O. M. Townsend* and *C. H. Skinker* for respondents.

(1)   The words "upon condition," "provided," etc., do not necessarily create an estate upon condition. What was once deemed a devise upon condition would now be generally construed a devise in fee upon trust, and instead of the heir entering for condition broken, the *cestui que trust* must enforce the trust or charge, by a suit in equity.   Sugden on Powers (8 Ed.), 106; Stanley v. Colt, 72 U. S. 502.   (2) Although the law allows testators to impose conditions subsequent, a breach of which will create a forfeiture, yet the law deems it improbable that testators will do so.   The language used must be such as to leave no doubt of the intention.   Courts will not give it that effect by construction.   4 Kent (10 Ed.), 156; Huff v. Nickerson, 27 Me. 106; Shep. Touch., 122.   (3)   The devise to Mary I. Roberts was absolute, "subject" only to the provision that she should support John N. Leonard. It does not provide that a failure to comply with this provision would operate as a forfeiture of the estate, but on the contrary the testator immediately proceeds to declare that upon such failure his land in Dallas county, Iowa, should be taken charge of by his executor, or a trustee appointed for that purpose, the rents used for the support of said John N. Leonard, and the surplus paid to Mrs. Roberts.   It is therefore clear that this provision in the will is not, in legal contemplation, a "condition subsequent," but it is no more than a covenant which became binding upon Mary I. Roberts upon

her acceptance of the devise; and was secured by being made a charge upon the testator's land in Dallas county. St. Louis v. Wiggins Ferry Co., 88 Mo. 615. (4) The words in the will devising the testator's property to Mary I. Roberts, "and her heirs" are the usual and appropriate common-law terms to pass an estate in fee. 29 Am. and Eng. Ency. Law (1 Ed.), 430; Cook v. Couch, 100 Mo. 29; Small v. Field, 102 Mo. 104.

BURGESS, J.—This is an action of ejectment for the possession of a tract of land in Polk county. The petition is in the usual form. Ouster laid December 2, 1898. The trial resulted in a judgment for defendants, from which plaintiffs appeal.

Both plaintiffs and defendants claim under the will of Alpheus Leonard signed by him at Panora, Iowa, on July 6, 1893, at which time he resided in that State. He owned a farm in that State, part of which was in Dallas and part in Guthrie county. He was a widower and had two children (both of whom lived with him), one a son named John N. Leonard, the other a daughter, Mary, who had intermarried with one J. W. Roberts. The son was feeble-minded; J. W. Roberts was a spendthrift.

At the time of the execution of his will the Iowa land was all the land the testator owned, but shortly after the execution of the will he sold that land and purchased the land in controversy from one Ben. T. Periman who executed a deed to him for it.

When Alpheus Leonard purchased the land in controversy he moved to Missouri and with him came his son, John N. Leonard, and his daughter, Mary I. Roberts, and her husband and family, all of whom lived together on the land until Alpheus Leonard's death, which occurred on June 26, 1895.

J. W. Roberts immediately had himself appointed administrator of the estate and secured the will which was still in Iowa, and had it probated, Alpheus Leon-

ard having left it with the attorney who drew the same.

Some time after the death of Alpheus Leonard, Mary I. Roberts and her husband exchanged the land in controversy with defendants for a tract of land. Defendants knew of the conditions in the will and also of the mental condition of John N. Leonard.

After moving onto the land obtained from defendants, J. W. Roberts induced his wife to join him in executing a mortgage on it, received the money, spent it, abandoned his family, and she died in absolute poverty, leaving a family of small children.

Her grown children (some of whom lived in Iowa), upon learning of the condition of affairs, came to Missouri, bought possession from those occupying the farm and supported the minor children and their feeble-minded uncle, John N. Leonard.

The farm was afterwards sold under a mortgage executed by Mary I. Roberts and her husband, and these adult children leased it from the purchaser at the sale. At the time of the sale of this place these plaintiffs had already instituted suit for the land in controversy.

After the death of Mary I. Roberts, her children, in connection with John N. Leonard, brought suit for the premises in controversy claiming that the will gave Mary I. Roberts only a life estate.

The will was duly recorded in the probate office of Polk county. It reads as follows:

"Be it remembered that I, Alpheus Leonard, of Guthrie county, State of Iowa, being of sound mind, do hereby make, publish and declare, this my last will and testament in manner following, to-wit:

"First. I desire that all my debts, including the expenses of my last sickness and my funeral expenses, be paid by my executor out of the proceeds of my personal estate.

"Second. I give and bequeath to my daughter, Mary I. Roberts, who is intermarried with J. W. Roberts of said county, and to her heirs, all my personal

estate of every kind soever remaining after the payment of my said debts and the amount necessary to defray the expenses of the administration hereof.

"Third. I give and devise to my said daughter, Mary I. Roberts, and to her heirs, all the real estate I now own, to-wit, the southwest quarter of the northwest fractional quarter and the northwest quarter of the southwest fractional quarter of section nineteen in township seventy-nine north, of range twenty-nine west of the fifth principal meridian, in Dallas county, Iowa; also the west half of the southeast quarter and lot two of the northeast quarter of the southeast quarter of section twenty-four in township seventy-nine north, of range thirty west of the fifth principal meridian, in Guthrie county, Iowa, together with all other real estate I may own at the time of my death, subject to the following conditions, to-wit: She, the said Mary I. Roberts, or her heirs, must care and provide for my son, John N. Leonard, during the period of his natural life, he to live with her and she to furnish him at all times with such proper and reasonable accommodations, support and clothing as is suitable to his condition in life, and whenever necessary such medical attendance and medicines as may be required by him.

"Fourth. Should my daughter, Mary, at any time fail in the performance of the conditions above mentioned, then and in that case I direct that the rents and profits of all the land above described lying in Dallas county, Iowa, be set apart to the use of my said son, John N. Leonard, for his support and maintenance during the remainder of his natural life, and I hereby direct my executor, or such person as may be appointed for that purpose by the district court of Guthrie county, Iowa, to collect the said rents and profits and apply them to the objects and uses aforesaid, anything remaining of said rents and profits after my said son's death and the payment of his funeral expenses, to go

Vol 173 mo—37

to my said daughter, Mary, or to her heirs if she be dead.

"Fifth. I hereby constitute and appoint John E. Wagner of said Guthrie county, Iowa, my sole executor of this my last will and testament."

The case was tried before the court sitting as a jury.

The plaintiffs asked the court to give the following declarations of law:

"1. The court declares the law to be that when lands are charged with conditions in a will then such will does not pass an estate in fee simple.

"2. The court declares the law to be that the will of Alpheus Leonard in evidence vested an estate for life in Mary I. Roberts subject to the charge that she would take care and provide for John N. Leonard and the remainder after her death is vested in her heirs subject to the same charge.

"3. If the court finds that the real estate in controversy was charged with the support and maintenance of John N. Leonard and that there was no personal liability on Mary I. Roberts upon her failure to support him, then under the law the said Mary I. Roberts took only a life estate and plaintiffs are entitled to recover.

"4. If it appears from the evidence that the plaintiffs are the heirs of Mary I. Roberts, and that plaintiff John N. Leonard is the person mentioned in the will, then the plaintiffs are entitled to recover the lands, with such damages as may have been proven."

The court gave declaration numbered one, and refused to give declarations numbered two, three and four asked by plaintiffs, to which action of the court in refusing to give said declarations as asked, plaintiffs then and there duly excepted at the time.

The defendants at the close of all the evidence asked a declaration of law in the nature of a demurrer to all the evidence, as follows:

"Under the pleadings and evidence the issues must be found for the defendants."

Which said declaration was given by the court over plaintiffs' objection.

The court found for defendants; plaintiffs appeal.

In the construction of a will the testator's intention must be gathered from the terms of the will itself, and extrinsic evidence is not admissible for the purpose of showing his intention unless some provision or clause of the will is so ambiguous in the language used as to make the intention of the testator doubtful; then his situation, the objects of his bounty and all surrounding facts may be considered in arriving at his true intention. [Hall v. Stephens, 65 Mo. 677; Garth v. Garth, 139 Mo. 456.]

There is no ambiguity in the language used in the will under consideration. By its express terms it gave to Mary I. Roberts and her heirs all the real estate which the testator then owned and vested the fee in her absolutely upon his death. The same rule with respect to the construction of deeds applies to the construction of wills, and it will not be contended that if the testator had conveyed by deed to his daughter, Mary I. Roberts *and her heirs,* the land involved in this litigation, she would not have taken the fee. In speaking of the rules for the interpretation of wills in Chew v. Keller, 100 Mo. l. c. 369, it was said:

"We may here mention, as guides, some of the established rules of construction. The first, and to which the others are aids, is that effect should be given to the intention of the testator, and the words used are to be understood in the sense indicated by the whole instrument. The word 'heirs' will be considered as a word of limitation and not of purchase, unless the will shows clearly that it is used to designate a new class of beneficiaries. [2 Washb. Real Prop. (5 Ed.), 654; Landon v. Moore, 45 Conn. 422; Thurber v. Chambers, 66 N. Y. 42; Linton v. Laycock, 33 Ohio St. 136.] So the word 'heirs' will be held to mean child or children when necessary to carry out the clear intention of the testator.

[Haverstick's Appeal, 103 Pa. St. 394.]    Indeed, these rules apply as well to deeds as to wills. [Rines v. Mansfield, 96 Mo. 394; Waddell v. Waddell, 99 Mo. 338.] Again, an estate in fee created by a will can not be cut down or limited by a subsequent clause, unless it is as clear and decisive as the language of the clause which devises the real estate." [Yocum v. Siler, 160 Mo. 281; Freman v. Coit, 96 N. Y. 63; Byrnes v. Stilwell, 103 N. Y. 453; Landon v. Moore, supra.]

It is clear to our minds that the word heirs as used in the will was not intended by the testator to mean children, but by the use of the word "heirs" he meant such persons as would take the land by operation of law, upon the death of Mrs. Roberts if she did not dispose of it during her lifetime.    That she took the fee under the will is not only apparent from the will itself, but that she so understood it, appears from the fact that she disposed of it by deed.    [Whittenton Manf. Co. v. Staples, 164 Mass. 319.]

It is true that the will provides that "she the said Mary I. Roberts, or her heirs, must care and provide for my son John N. Leonard during the period of his natural life, he to live with her and she to furnish him at all times with such proper and reasonable accommodations, support and clothing as is suitable to his condition in life, and whenever necessary such medical attendance and medicines as may be required by him." It does not, however, provide that a failure to comply should operate as a forfeiture of her interest in the land which she took under the will, but on the other hand, in the next following clause of the will it is provided that upon a failure of Mrs. Roberts to comply with this provision of the will his land in Dallas county, Iowa, should be taken charge of by his executor, or a trustee appointed for that purpose, the rents used for the support of his son, John N. Leonard, and the surplus paid to Mrs. Roberts.    It is, therefore, clear that the passage of the title to the land in fee to her under the will in no

way depended upon her compliance with the conditions of the will with respect to the support, by her and her heirs, of John L. Leonard, unless the condition was a subsequent condition as contradistinguished from a covenant to take care of John L. Leonard. "It is a familiar rule often asserted in the books that conditions subsequent are not favored in the law, because they have the effect in case of breach to defeat vested estates; and when relied upon to work a forfeiture they must be created in express terms or by clear implication. [2 Wash. on Real Prop. (5 Ed.), 7; Morrill v. Railroad, 96 Mo. 174.] And courts will construe clauses in deeds as covenants rather than conditions, if they can reasonably do so. [2 Wash. on Real Property (5 Ed.), 4.] It is also true that the question whether a clause in a deed is a condition or covenant, is one of intent to be gathered from the whole instrument by following out the object and spirit of the deed or contract. (St. Louis v. Wiggins Ferry Company, 88 Mo. 618.)" [Studdard v. Wells, 120 Mo. 25.]

Now, that the testator did not intend that the clause in the will providing for the support and maintenance, by Mrs. Roberts and her heirs, of John N. Leonard during his lifetime, was to operate as a forfeiture of her interest in the land in the event of her or their failure to comply with that provision of the will, is shown by the whole will, and especially is it clearly indicated by the clause which provides for his support in the event of their failure in the performance of the conditions of the will in that respect. Where conditions subsequent are relied upon to operate a forfeiture of an estate in land, if not complied with, it is usual to insert a clause in the instrument conveying the property, of re-entry or reverter, but there is nothing of that kind in the will in question, which seems to be another argument in favor of the position which we have taken with respect to the intention of the testator.

Our conclusion is that the court did not err in refusing instructions asked by plaintiffs, nor in giving the one asked by defendant in the nature of a demurrer to the evidence.

The judgment is affirmed. All of this Division concur.