## JAMES YOUNG et al., Executors, etc., Respondents, v. GARRET ROBINSON et al., Appellants.

**Kansas City Court of Appeals, November 19, 1906.**

1. **WILLS: Trust and Trustees: Rights of Beneficiary.** An item of a will giving certain money to A in trust, free from all inter-ference to the sole and separate use of E, is construed and held to mean that E would have a right under the will to the abso-lute control and disposition of the money as he saw fit and the interference referred to was possibly the dictation of E's hus-band or other relatives; and being a dry trust with no execu-tory functions vested in the trustee the equitable estate com-prised all but the naked and legal title.

2. ———: **Construction: Rules: Power of Disposal: Remainder.** In construing wills the intention of the testator collected from the whole instrument must govern; and a will should not be construed so as to contradict itself nor as to be inconsistent with the law; but when two purposes are irreconcilably in con-flict then resort must be had to the general scheme of the will to ascertain which of the two was dominant in the mind of the testator and the absolute power of disposal carries with it the fee and the remainder over is void.

3. ———: ———: ———: ———: ———. So the item of the will in question giving the money to A in trust for E and the re-mainder over to B is construed to give E the absolute and un-restricted power to use and dispose of the legacy in question which is only compatible with an estate in fee and the re-mainder over is void.

4. ————: ————: **Death of Legatee: Residuary Legatees.** The testamentary disposition will lapse by the death of the legatee during the life of the testator; but the rule is harsh and not favored by the courts; but in the will in question the 9th clause provides for the contingency of E's death by making the legacy a part of the residuary estate to be distributed among residuary legatees.

Appeal from Boone Circuit Court. — *Hon. Alex. H. Waller,* Judge.

AFFIRMED.

·*C. B. Sebastian* and *W. M. Williams* for appellants.

(1)   The petition sets out the substance of the fourth item of the will, and the decree of the court declares that, in consequence of the death of Edward Young in the lifetime of the testator, the entire legacy given by that item lapsed.   If the construction given to the will by the court below is erroneous, the error appears upon the record proper and is reviewable upon this appeal.   Brooks v. Brooks, 187 Mo. 482; Bagby v. Emerson, 79 Mo. 140; State ex rel. v. White, 61 Mo. 441; Brown v. Appleman, 83 Mo. App. 83.   (2)   "It is a conceded principle, most clearly established, that a testamentary disposition will lapse by the death of the legatee during the life of the testator.   And this rule equally applies to devises of real as to bequests of personal estate.   This rule has been long settled and recognized and is often productive of hardship, and in some cases defeats the intention of the testator.   But the doctrine will not be extended beyond cases falling strictly within it."   Martin v. Lachasse, 47 Mo. 593; Crecelius v. Horst, 9 Mo. App. 54.   (3)   The court erred in holding that the death of Edward Young in the lifetime of the testator, caused the lapse of the legacy in the fourth item to Ann Eddie Young and Francis Brooks.   They, at the death of Edward Young, were to take the legacy given by that item and their interest in the fund cannot

be defeated by his death in the lifetime of the testator. Fisk v. Fisk Heirs, 59 Atl. (R. I.) 740; Crozier v. Brady, 120 N. Y. 374; Bates v. Dewson, 128 Mass. 304; Robinson v. Female Orphan Asylum, 123 U. S. 702.

*E. W. Hinton* and *Webster Gordon* for respondents.

(1) In order that the court may be relieved of any unnecessary investigation, counsel for respondents wish it to be understood that they do not controvert the general proposition that where a will creates a life estate with remainder over, the death of the person named as life tenant prior to the decease of the testator will not ordinarily affect the remainder. This is the rule announced in Robinson v. Orphan Asylum, 123 U. S. 702, and Bates v. Dewson, 128 Mass. 304, cited by appellants, and counsel have no disposition to question it. (2) In determining the extent of the interest given to Edward Young whether absolute or for life merely, and whether a valid gift could be made of any unused balance of the fund, it can make no difference that the bequest was in trust, because in this respect equity follows the law, and language which would create an absolute or fee simple estate at law, will create an interest of the same extent and duration in equity, which will be governed by precisely the same rules. Cornwall v. Wulff, 148 Mo. 542; Simmons v. Cabanne, 177 Mo. 336. (3) The language of the fourth item gives the beneficial interest in the fund without limitations or qualifications to the brother, Edward Young. He is not restricted to the income, or to such part of the principal as might be necessary for his support, or as the trustee might think proper; but the gift is general, and expressly contemplates the expenditure of the fund by him. Hence this general gift of the fund itself cannot be cut down by implication merely. Gannon v. Albright, 183 Mo. 252; Roth v. Rauschenbusch, 173 Mo. 582; Cornwell v. Orton, 126 Mo. 355; Wead v. Gray, 78 Mo. 59.

JOHNSON, J.—This is an action brought by the executors of the last will of Ambrose C. Young, deceased, to obtain a construction of the will. The testator was a farmer living in Boone county, who died in July, 1903, without leaving widow or issue. His will was made on October 6, 1900, and the portions thereof material to our inquiry are as follows:

"Item 2d. I will and bequeath unto Ann Eddie Young, my beloved niece, the sum of $6,000 to her sole separate and absolute use and benefit free from the interference and control of any person or persons whomsoever.

"Item 3d. I will and bequeath unto Ann Eddie Young, my said niece, all my household and kitchen furniture in addition to the above bequest of item 2d.

"Item 4th. I will and bequeath unto Ann Eddie Young the sum of $1,500 to be held in trust by her without bond and free from all interference to the sole, separate and exclusive use of my beloved brother, Edward Young, and at his death any remainder or residue thereof to be divided two-thirds to Ann Eddie Young and one-third to my niece, Frances Brooks."

"Item 8th. I will and bequeath to all my relations above mentioned and all those relations not herein mentioned and bearing the relationship to me of nephews and nieces and to none further removed in relationship than those mentioned above any remainder or residue of my estate to be divided and shared equally among them share and share alike.

"Item 9th. I will and direct that in the event that any one or more of the above-named heirs entitled to a share in my estate shall die before their respective share or shares shall have been paid to them, then such share or shares shall revert back to my estate and shall be treated and distributed according to the tenor and provisions of item 8th of this my will.

"Item 10th. I also will and direct that in the event

that any one or more of my said heirs shall fail or neglect to appear and claim their respective share or shares of my said estate within two years after letters testamentary or of administration shall have been granted such share or shares shall revert back to my estate and shall be distributed and divided among the other heirs.

"Item 11th. I will and direct that my executors hereinafter named shall immediately after my death take out letters testamentary and take possession of all my personal property and real and proceed to sell the same according to law and convert the same into money and make final distribution and settlement within two years from the date of letters testamentary on my said estate."

By a codicil made August 25, 1902, the testator's brother, Edward Young, and his niece, Ann Eddie Young, were given "the free and uninterrupted use and occupancy for one year of my residence house for their use as a home, the same being situated on my homestead farm together with the garden, orchard, stables and lots and sufficient pasturage as may be necessary for the sustenance of such stock as they or either of them may elect to keep for their own use for a period of one year from the date of letters testamentary on my said estate" and by a second codicil made on July 2, 1903, the testator increased the amount of the legacy to Ann Eddie Young provided in the second item of the will from $6,000 to $12,000.

The contest now before us relates only to the construction of the fourth item of the will, but we have copied other portions of the instrument and of the codicils for the reason that they throw some light on the intention of the testator respecting the interpretation to be placed on the provision in controversy. Before the bringing of this action Ann Eddie Young intermarried and her name is Ann Eddie Ellis. Edward Young, the beneficiary of the trust created in the fourth item

died sometime after the making of the first codicil and before the death of the testator. It is contended by the plaintiffs and the learned trial judge so held, that the legacy in question lapsed by the death of the *cestui que trust* before that of the testator and under the provision of the ninth item became a part of the general estate to be divided as directed in the eighth item. Ann Eddie Ellis and Frances Brooks appealed from this judgment and contend that effect should be given the evident intention of the testator that they should have all that might remain of that legacy at the death of Edward Young and that the fortuitous happening of that event during the lifetime of the testator should not be held either to have altered the expressed purpose of the testator or to have prevented its accomplishment in law.

From statements made by counsel, we infer that Edward Young, when the will was made, was an old man who suffered under no sort of legal disability. For some reason not disclosed to us, the testator thought it prudent not to have the legacy paid directly to him, but to have it placed in the hand of their niece, Ann Eddie Young as trustee, to hold for his sole use and benefit. The trustee was not empowered to loan or invest the fund nor was she directed to use her own judgment in determining when and in what amounts and for what use she would pay the money over to Edward. The fund was not set apart for the support and maintenance of the beneficiary. He could draw on it for that purpose or for any other. The words "free from all interference" do not mean that the trustee was to dole the money out to Edward as her judgment dictated, but evidently were designed to protect her against the interference of her husband, should she marry, as well as from that of relatives. As between her and Edward, the latter had the right to say when and in what amounts he would use the fund and he had the right to use it all if he chose. To say that the trustee was invested with any control over

his use of the money would compel us to read restrictions into the provision that the testator abstained from inserting, doubtless for reasons satisfactory to himself, and thus to substitute our judgment for his. But though it is clear the testator intended to give his brother all that he might want to use of the legacy, even to the point of consuming the whole, it also appears he contemplated that Edward might not use it all and in such event directed that the remainder should be divided between the two nieces named. We have here a dry trust. The trustee having no executory functions to perform, the equitable estate created comprised all but the naked legal title. In such case, questions relating to the nature and extent of the equitable interest granted to each class of beneficiaries named must be governed by the same principles that apply to legal estates and we will treat them as we would had no separation been made by the testator of the legal and equitable estates. [Cornwell v. Wulff, 148 Mo. 542; Simmons v. Cabanne, 177 Mo. 336; 1 Perry on Trusts, sec. 357.]

In analyzing the provisions of the will relating to the legacy in question, we are guided by these rules and principles of construction. The paramount consideration is to give effect, if possible, to the intention of the testator and such intention must be collected from the whole instrument and not from isolated parts thereof. A will should not be so read as to contradict itself if any other reasonable interpretation is possible and if capable of two constructions, one of which is consistent and the other inconsistent with the law, the former will be preferred as it is presumed the testator intended that effect should be given to all parts of the will and also intended to comply with the law. [Crozier v. Bray, 120 N. Y. 366.] When, however, two purposes are expressed by the testator which are so irreconcilably in conflict with each other that both cannot stand together, then resort must

122 App—13

be had to the general scheme and plan of the will to ascertain which of the two was the dominant purpose in the mind of the testator and effect must be given to that purpose though the other be thereby rendered entirely abortive. Thus where the words of the will clearly indicate a purpose on the part of the testator to give the entire interest, use and benefit of a legacy to the first donee, a fee simple estate is granted despite the fact that in subsequent words an intention is expressed to dispose of any residue that may remain, at the death of the legatee. The grant of the absolute power of disposition necessarily carries with it the fee and a remainder over is void either as a remainder or as an executory devise because it is inconsistent with the preceding fee. An absolute power of disposal cannot be given and still retained by the donor. [Roth v. Rauschenbusch, 173 Mo. 582; Gannon v. Albright, 183 Mo. 238.]

Guided by these principles, we find no difficulty in saying, that the controlling purpose of the testator was to give to Edward, his brother, the absolute and unrestricted power to use and dispose of the legacy in question and to consume it all if he so desired. The exercise of such right was compatible only with an estate in fee and the remainder over to the two nieces must be held void. A comparison of the language employed in the bequest under consideration with that found in the class of cases of which Lewis v. Pitman, 101 Mo. 281; Evans v. Folks, 135 Mo. 397, and Underwood v. Cave, 176 Mo. 1, are typical, will clear the conclusion we have reached from the charge of being in conflict with the principles followed in those cases. In all of them, it will be observed that in addition to disposing of the remainder left at the death of the first donee, the testators used words and expressions indicative of an intention to limit the grant to the first donee to a life estate. Thus, in Evans v. Folks, the testator devised and bequeathed his real and personal estate to his wife "ab-

solutely and to the use of her own interest and benefit *during her natural life."* The grant was held to convey a life estate, but the principle we are following was expressly recognized. "Where there is a general devise without any specification of the interest devised and an absolute power of disposal is conferred by the will, the devisee takes a fee and may dispose of the estate at his or her pleasure." And in Underwood v. Cave, the grant to the first donee was expressly limited to "during her natural life" and again the principle under consideration was reaffirmed. Our attention has not been called to any case in this State where it is held that the grant of an estate, which is unqualified by any words indicating an intention to restrict it to a life estate and which bestows on the first donee the absolute power of disposal, is other than the grant of a fee or that it will be cut down to a life estate by the addition of words evincing a purpose on the part of the testator to dispose of the remainder over.

Finally, we come to the question of the effect on the legacy of the death of the legatee during the life of the testator.

"It is a conceded principle most clearly established that a testamentary disposition will lapse by the death of the legatee during the life of the testator." [Martin v. Lachasse, 47 Mo. 591.] But this rule being harsh and productive of hardship is not in great favor with courts and is seldom extended beyond cases falling strictly within it. We find no occasion to apply it in the present case for the reason that in the ninth clause of the will the testator expressly provided that in such contingency the legacy should become a part of the residuary estate and be distributed among the classes or persons named as residuary legatees and devisees. We know of no reason for refusing to give effect to this provision and therefore hold that the legacy did not lapse so that the testator died intestate as to that por-

tion of his estate, but became the subject of the alternative disposition provided in the eighth and ninth items of the will. In the decree rendered, the learned trial court directed that such disposition be made of the legacy and it follows that the judgment should be affirmed. It is so ordered. All concur.