PRATT et ux., Respondents, v. SALINE VALLEY RAILWAY COMPANY, Appellant.

St. Louis Court oɪ Appeals, March 17, 1908.

1. EMINENT DOMAIN: Taking Land for Railroad without Condemnation: Estoppel. In an action for damages to the plaintiff's farm caused by the construction of a railroad through it without any condemnation proceedings on the part of the railroad company, defendant, the evidence is examined and held that the acts of the plaintiff would not justify a declaration of law that the plaintiff was estopped to claim damages.

2. ————: ————: Remedy of Landowner. Where land is appropriated by a railroad company for right of way without condemnation proceedings, the landowner may recover in an action for damages the value of the land appropriated and the damage to the remainder of the land, and need not proceed under the provisions of section 1271, Revised Statutes 1899.

3. JURISDICTION: Supreme Court and Court of Appeals: Title to Land Involved: Damage to Land Appropriated by Railroad Company. In an action brought by a landowner to

recover damages to his land on account of the construction of a railroad through it, where on the question of damages it was pleaded in defense that the plaintiff had a life estate only and not a fee simple estate in the premises, the title to real estate was not involved, so as to divest the Court of Appeals of jurisdiction to entertain an appeal of the cause.

4. ESTATES: Life Estate: "Heirs:" Wills. The use of the word "heirs" in connection with a devise is not necessary in order to pass by will a fee simple title, under section 4690, Revised Statutes 1899, but its use in that connection may be material in ascertaining whether the intention of the testator was to vest a life estate or a fee simple, when the purpose of the instrument is doubtful.

5. ——: ——: Restriction on Alienation: Wills. Where a will gave land to a devisee and her heirs and restricted them from selling or encumbering it for a term of fifty years after the testator's death, such restriction was void as against public policy, but the restriction could be taken into consideration as throwing light on the intention of the testator.

6. ——: ——: ——: ——. Where a testator devised to his daughter and her heirs a tract of land and provided that neither she nor her heirs could sell or contract any debts on the land until fifty years after the testator's death, that she should divide the land equally among her heirs and if she failed to do so there should be commissioners appointed to divide it, these provisions of the will gave to the daughter a life estate only.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*Giboney ·Houck* and *Benson C. Hardesty* for appellant.

The plain and manifest intent of Lorenz is to devise a life estate to his daughter Anna and the remainder to her heirs (children). (1) Even the words "desire," "request," "recommend," "hope," etc., when they come from a testator who has the power to command, are often construed as commands, clothed merely in the language of civility. Chiles v. Bartleson, 21 Mo. 344; Munro v. Collins, 95 Mo. 33; Erickson v. Wil-

liard, 1 N. H. 217. (2) It is the popular meaning of the term among laymen, and the courts always construe the word heirs to mean "children," whenever that is the sense in which a testator uses it. Maguire v. Moore, 108 Mo. 273. (3) Having repeatedly used the word "heirs" in the sense of "children" and as a word of purchase, the presumption is that he is still so using it when he says, "To my daughter, Anna M. Pratt, and her heirs." And to construe the word heirs as a word of limitation in the above clause just quoted, and to hold that Anna acquired a fee under the devise in question, is a plain violation of the canon under consideration. Waddell v. Waddell, 99 Mo. 345; Woerner on Administration, sec. 416, par. 3. (4) Defendant's evidence, tended to prove the necessary elements of an "estoppel in pais," and the court erred in refusing to allow this issue to go to the jury. Newman v. Hook, 37 Mo. 207; Rice v. Bunce, 49 Mo. 321; Spence v. Renfro, 179 Mo. 417; Bank v. Ragsdale, 171 Mo. 168; Bank v. Frame, 112 Mo. 502. (5) The remedy provided plaintiffs in section 1271, Revised Statutes Missouri 1899, is exclusive of all other remedies. The same act which provides for the damaging of private property for public use now prescribes the remedy. The remedy provided is adequate and complete and within the election of either party. It therefore completely supersedes and is exclusive of all other remedies. Where either party may be the actor, neither can complain that the other did not begin. Evans v. Railroad, 64 Mo. 453; Lindell's Adm. v. Railroad, 36 Mo. 543; Soulard v. St. Louis, 36 Mo. 546; Leary v. Railroad, 38 Mo. 486; Hickman v. Kansas City, 120 Mo. 110; Jamison v. Springfield, 53 Mo. 229; State ex. inf. v. Railroad, 176 Mo. 717.

*Jerry B. Burks* and *C. J. Stanton* for respondents.

Now, we are not disposed to write a treatise on the law of wills, but do insist that under the authorities

below cited, and under a common sense interpretation of the will of John Lorenz, deceased, plaintiff, Anna M. Pratt, became, under said will, the owner in fee simple of the lands for which damage is asked. "It conveyed a fee in first instance, and any subsequent attempt to cut this estate down necessarily must fail. Roberts v. Crume, 173 Mo. 572; Roth v. Rauschenbush, 173 Mo. 582; Young v. Robinson, 122 Mo. App. 187; Small v. Field, 102 Mo. 104; Yocum v. Siler, 160 Mo. 289; secs. 4645, 4646, R. S. 1899; Gannon v. Albright, 183 Mo. 238. There was not one particle of evidence that Mrs. Pratt ever gave a right of way, or ever had any reason to believe that defendant was expecting her to make a donation of her lands to it. Miller v. Railway, 162 Mo. 424; Blodgett v. Perry, 97 Mo. 273.

STATEMENT.—The will construed in this case reads as follows:

"Know all men by these presents: That I, John Lorenz, of Perry county and State of Missouri, considering the uncertainty of this life, and being of sound mind and memory, do make, and declare and publish this, my last will and testament.

"First. I give and bequeath to my wife Sophia Lorenz, all my property both personal and real estate with power to collect all debts due me and to pay all my debts. Then she shall pay to each of my children five dollars each as follows:

"1st. Henry C. Lorenz, five dollars.

"Mary E. Nash, five dollars.

"Louise Kenner, five dollars.

"John P. Lorenz, five dollars.

"Anna M. Pratt, five dollars.

"My wife is to have and to hold this property for three years after date of this will; after the debts are paid all my land shall be divided as follows:

"1st. I will to my son Henry and his direct heirs,

120 acres of land which I bought from August Holster, lying in Boisbrule bottom, also ninety-five acres more or less which I bought from Benjamin Cambron; also ninety-three acres more or less which I bought from Charles N. Rimbroch, all lying in Boisbrule bottom. My son cannot sell or contract any debts on this land, neither can his heirs until fifty years after my death. My son Henry shall divide the land among his children as he sees best and if he fails to do that as I have done, there shall be a commissioner appointed to divide it according to this provision.

"2nd. I will to my daughter, Mary E. Nash, and her direct heirs, the following tract of land, sixty acres more or less which I bought from August Layton, lying near Brewer in Perry county and State of Missouri, which she occupies now; also one-half of one hundred and twenty-seven acres and a half in the bottom known as the Godloup Voeker farm; my wife and Henry Voekler shall divide the land and if they can't agree there shall be a commissioner appointed to divide it. Also forty acres more or less of the Hagan farm in Boisbrule bottom in Perry county, Missouri, to-wit: running along left side of public road. My daughter Mary cannot sell or contract any debts on this land, neither can her heirs, until fifty years after my death. My daughter shall divide this land equally among her heirs and if she fails to do so that there shall be commissioners appointed to divide it according to this provision.

"3rd. I will to my daughter Louise Kenner and her direct heirs, sixty acres more or less in Boisbrule bottom in Perry county, Missouri, which I bought from Jules Rozier, also thirty acres joining said tract on the east side which I bought from Edward McCabe, also forty-five acres more or less which I bought from the Hagan heirs, also seven shares in the homestead of the Hagan tract now owned by Mrs. Mike Gibbar. My daughter Louise cannot sell or contract any debts on this

land neither can her heirs, until fifty years after my death. My daughter Louise shall divide this land equally among her heirs, and if she fails to do that there shall be commissioners appointed to divide it* according to this provision; also a little brick house and four lots more or less or near the town of St. Mary's in St. Genevieve county, Missouri; she shall have power to sell this property whenever she sees fit to do so.

"4th. I will to my daughter Anna M. Pratt and her heirs, 265 acres more or less lying on the Saline in St. Genevieve county, Missouri, which I lately bought of B. S. Pratt. My daughter Anna cannot sell or contract any debts on this land, neither can her heirs, until fifty years after my death. My daughter Anna shall divide this land equally among her heirs and if she fails to do that there shall be commissioners appointed to divide it according to this provision.

"5th. I will to my son John P. Lorenz, all of my land lying on or near Cedar Fork creek in Perry county, Missouri, except the homestead or all the land lying above the county road known as the Perryville and Farmington road.

"This part I will to my wife Sophia Lorenz during her lifetime; at her death it shall go to my son John P. Lorenz. My son John P. shall not sell nor contract any debts on this land, neither can his heirs, until twenty-five years after my death. After that time he can sell a part of it, say two hundred acres above the house which is now my residence. ·

"Also to my wife Sophia, my river farm in Boisbrule bottom, Perry county, Missouri, to have and to hold as long as she lives and at her death to go to my son John P. Lorenz. My son John P. cannot sell or contract any debts on this land, neither can his heirs, until fifty years after my death. My son John shall divide this land equally among his heirs, or if he fail to do that, there

shall be commissioners appointed to divide it according to this provision.

"6th. I will to my grandson Bernard Lorenz fifty-two acres more or less which I bought from Milt Dean; also twenty-eight acres more or less of the same tract of land, the widow Dean holding a dower on it her life time. My wife shall hold the land until Bernard is of age, then he shall have possession of it. He can neither sell or contract debts on it until fifty years after my death. Bernard Lorenz shall divide this land equally among his heirs and if he fail do this there shall be commissioners appointed to divide it according to this provision.

"7th. I will to my grandson John Nash, thirty-seven acres more or less; also two shares in the widow's dower of the Isaac McClure farm in Boisbrule Bottom, Perry county, Missouri. My wife shall have possession of the same until John Nash is of age when he shall have full possession of the thirty-seven acres. John Nash shall not sell the land or contract any debts on it until fifty years after my death. He shall divide it equally among his heirs, or if he fail to do so there shall be commissioners appointed to divide it according to said provisions.

"8th. I will to my wife Sophia Lorenz, the one-half of Silver Lake custom and sawmill with power to sell or give away. Also all of my property in the town of St. Mary's in St. Genevieve county, Missouri, except the lots and house that I have willed to my daughter Louise Kenner, she can sell this property whenever she sees fit.

"9th. My dear children I have divided the land as best I could amongst you. I want you to be good friends to each other; keep the land and fence in good repair. Keep the taxes paid up and the land is yours; but if any of you should fail to pay the taxes there shall be a guardian appointed to rent the land and pay the taxes.

"10th.   I do nominate and appoint my son Henry Lorenz to be the executor of this my last will and testament.

"In witness whereof I have to this last will and testament subscribed my name and set my seal this 21st day of October, 1895.

"JOHN LORENZ.   (Seal).

GOODE, J. (after stating the facts).—Plaintiff, Anna M. Pratt, is the owner of a farm in St. Genevieve county, which was devised to her by her father John Lorenz.   The description of the land is intricate and as it is not material to our decision will be omitted.   In April, 1905, or thereabouts, the defendant company entered on the farm and built a roadbed and line of railway across it.   In doing this eleven or twelve acres were appropriated for right of way and damage was done, it is alleged, to the remainder of the farm.   The petition charges, the value of the land actually appropriated was $100 an acre, or $1,200.   The railway followed the course of a creek which surrounds the farm on the north and east sides.   This creek is crossed by a railway bridge not far from the point where the line enters the farm close to its southeast corner and thence proceeds in a direction just west of north to within a short distance of the northern boundary of the farm, which is the creek.   Near the northeast corner of the land the road runs westward and a little to the south, following the course of the creek to the west boundary of the farm. In the main, if not throughout its whole route through the farm, the railway runs along the creek bottom, leaving the bluffy land to the south and west.   Plaintiffs say this route takes the railway through the cultivated fields and bottom lands and divides said fields from the rest of the farm, cutting them into narrow strips lying between the right of way and the creek, and rendering the waters of the creek inaccessible from the main part

of the farm and to plaintiff's stock.  It is further charg-
ed the railway runs within fifty feet of the dwelling
house, cuts off the wagon road leading to it and greatly
hinders and inconveniences plaintiffs in the enjoyment
of their home.  The entry and the appropriation of
their land were made without the institution of con-
demnation proceedings, and the lands never have been
condemned for railroad purposes.  In defense it is ad-
mitted the company entered on the lands described in
the petition, constructed its railroad thereon and in so
doing took a strip one hundred feet wide through the
farm.  It is further alleged that Anna Pratt, instead of
owning the fee in the land had only a life estate, and
that her husband Joseph C. Pratt, has no interest in
the land other than as her husband, and further, that
the two plaintiffs have children born of their marriage.
The answer alleges the land not appropriated was great-
ly benefited by building the railroad, in addition to the
benefit accruing to other lands in the vicinity.  In fur-
ther defense it is alleged the company constructed the
road through the land with the consent of Anna Pratt,
as owner of the life estate.  It is set up that her hus-
band, both for himself, and as her agent, repeatedly as-
sured the company that he and his wife, in consideration
of the benefit the road would be to them, had signed a
deed granting to defendant the right of way as it now
lies, through the farm; and said Joseph Pratt, acting
for his wife and himself, led the officials of the road to
believe the company had been given the right of way over
the farm, and the company acted on said representation
in good faith in building the road; that it was thereby
directly induced to build along the route described in the
petition, and plaintiffs stood by without protest and saw
ten thousand dollars expended in the work, knowing
the company was acting in good faith and in reliance on
their representation that the right of way occupied had
been given to the company; that plaintiffs acquiesced

in and consented to the construction of the railroad aforesaid, and the company is now in possession of its right of way with the consent of plaintiffs and not otherwise. A reply was filed consisting of a denial of the averments of new matter in the answer. The trial was by a jury, resulting in a verdict for plaintiffs in the sum of $2,000, and defendant appealed.

Suffice to say as to the estoppel pleaded, consisting of allegations that plaintiffs represented to the company a deed had been executed conveying the right of way through the farm, thus inducing the company to build its road, and had encouraged the building and watched defendant make a large outlay without protest, that at most, issues of fact were made by the evidence as to these matters. Some evidence for the company tended to prove Joseph Pratt made the statement regarding the donation of the right of way averred in the answer, but his own evidence and a portion of the defendant's goes to show he only promised the right of way would be conveyed to the company if it built along a certain hillside on the farm, instead of in the creek bottom, the route actually occupied. The court would have fallen into error had it declared as a matter of law plaintiffs were estopped to claim damages. As soon as they learned of the entry of the company on their farm for the purpose of building a road through it, and this was but a few days after the entry and before any outlay of consequence had been made, they telephoned the company's attorney, protesting against the construction of the road over their land until proper condemnation proceedings had been instituted, and stating they would demand damages for the unlawful entry. The elements of an equitable estoppel are not in proof. [Eitelgeorge v. Bldg. Assn., 69 Mo. 52; Spurlock v. Sproule, 72 Mo. 503.]

Before taking up the chief point in the case, we will advert to another proposition insisted on by de-

fendant; i. e., that the only remedy available to plaintiffs is the one provided by section 1271, Revised Statutes 1899. Said section will be found in chapter 12, article 7, which relates to the condemnation and valuation of lands taken for railroad and other public purposes, and prescribed rules for the exercise of the right of eminent domain by public corporations. Most of the chapter is devoted to regulating the condemnation of property in proceedings instituted by some company wishing to appropriate the property; but section 1271 invoked by defendant in the present case, says that in case property is to be, will be, or has been damaged by a corporation for public use, any person interested may have such damages ascertained and the proceedings for ascertaining the damages shall be the same as are or may be provided by law for assessing damages which the owners of land may sustain in consequence of its appropriation for railroad purposes. Defendant says the remedy provided by that section is exclusive, and instead of plaintiffs having the right to sue for the value of the land appropriated by the company and for damages for the injury done to the remainder of the farm, they should have instituted proceedings under the statute for an assessment of all their damages. It will be observed the statute does not undertake to provide a remedy for the taking of property, but only for the damaging of it, and hence defendant's position is untenable so far as regards the recovery of compensation for the land actually taken by the company. An action of this character has been recognized as the proper remedy when land is appropriated by a quasi public corporation, without condemnation proceedings; and in such a case the plaintiff is allowed to recover not only the value of the land the company appropriated, but also for the detriment suffered by the remainder of the tract. [Doyle v. Railroad, 113 Mo. 280, 20 S. W. 970; Webster v. Railroad, 116 Mo. 114, 22 S. W. 474; Miller v. Rail-

road, 162 Mo. 424, 63 S. W. 85.] And it seems that even where the purpose of the action is to recover only compensation for damage done to property for the use of the public, as in changing the grade of a street, a proceeding like the present is upheld. [Clemens v. Insurance Co., 184 Mo. 46, 82 S. W. 1.] In view of those authorities we hold this case was rightly brought and that plaintiffs are not debarred from maintaining it because another remedy for damage to property is given by statute.

We might have some doubt about our jurisdiction of the case had it not been settled by decisions of the Supreme Court. It has been held that, though a proceeding to condemn land for railroad purposes does not divest the owner of his title, but only vests in the company an easement in the land for railroad purposes, yet such easement affects the proprietary rights of the owner (State ex rel. v. Rombauer, 124 Mo. 598, 28 S. W. 75); and hence brings the cause within the force of the provisions of the statute giving the Supreme Court jurisdiction in cases involving title to real estate. In other cases the Supreme Court has held that if lands are not taken under condemnation proceedings by railroad companies, but are appropriated without such proceedings, and the owner sues for their value and recovers judgment, a satisfaction of the judgment will operate to vest in the defendant company an easement in the land as effectually, to all intents and purposes, as if condemnation proceedings had been regularly instituted and consummated. [Webster v. Railroad, 114 Mo. 118; Doyle v. Railroad, 113 Mo. 280, 287; McReynolds v. Railroad, 110 Mo. 484, 19 S. W. 824.] This being true, it would look like the title to real estate was as much affected by, or as much involved in, an action by the owner for damages when his land was appropriated without condemnation proceedings, as it is in a condemnation proceeding, and that if the juris-

diction is in the Supreme Court in one case, it is in the other. But in Edwards v. Railroad, 148 Mo. 513, 50 S. W. 89, which was an action like this one, and brought by the owner of land to recover damages on account of the construction of a railroad through it and the appropriation of a strip one hundred feet wide, the Supreme Court held the title to real estate was not involved or affected within the meaning of the clause giving it jurisdiction, and transferred the cause to the Kansas City Court of Appeals.

The important question on the appeal and the main controversy between the parties, is as to whether Mrs. Pratt owned a fee in the land taken by the company or merely a life estate. The answer to this question turns on the construction of her father's will by which the lands in question were devised to her and under which alone she claims title. She and her husband have two children and it is argued for the company that the will gave her only a life estate in the land with a remainder over to her children. The court below rejected the theory of defendant that Mrs. Pratt took a life estate and held that she took the fee. It is apparent this ruling affected the amount of damages plaintiffs were entitled to recover; for the value of her interest in the strip appropriated would be different if she held only a life estate with the remainder over, from what it would be if she owned the entire fee. [Corrigan v. Chicago, 21 L. R. A. 212, note pp. 218, 220; Passmore v. Railroad, 9 Phila. 579; Miller v. Ashville, 112 N. C. 759; Boston v. Robbins, 121 Mass. 453; Harrisburg v. Crangle, 3 Watts. & S. 460; Railroad v. Dyer, 35 Ark. 360; Railroad v. Baker, 45 Ark. 252; Knapp v. Railroad, 53 N. Y. S. R. 571; Thompson v. Railroad, 130 N. Y. 360; In re Daly, 51 N. Y. Supp. 576; Elledge v. Railroad, 38 Am. St. Rep. 290.] Few questions have given rise to more litigation and perhaps to more discordant decisions, than the question of whether titles

in fee simple were vested in the first takers under devises in various wills. Our Supreme Court has had occasion to pass on numerous controversies involving the point, and we need not go outside the decisions in this State for light on the clause of the will we must construe. It will be observed that in the fourth para-graph, John Lorenz declared he devised to his daugh-ter, Anna Pratt, and her heirs, two hundred and sixty acres more or less lying on the Saline in St. Genevieve county. This is the land in controversy. In the same clause of the will, the testator provided against his daughter Anna selling or contracting any debts on the land devised, and also against her heirs doing so for fifty years after his death; further that his daughter should divide the lands equally among her heirs, and if she failed to do this, there should be a commission appointed to divide them. The devise was to Anna Pratt and her heirs; but the latter words never were necessary to pass by will a fee simple title, and are not necessary under our statutes even to convey a fee by deed. [R. S. 1899, sec. 4590.] Hence in law they add nothing to the quantity of the estate granted or devised, but may be material in ascertaining whether the intention was to vest a life estate or a fee when the purpose is dubious. If the first sentence of the fourth paragraph of the will in question stood alone, we would not hesitate to say the devise was in fee to Anna Pratt, and that the words "her heirs" were used by the testator according to the ancient phrasing, with the intention of limiting a fee simple estate to her and not to limit a life estate to her with a remainder over to her heirs. But there are other sentences in the same paragraph which bear materially on the point in hand and clearly indicate the purpose of the testator was to give his daughter only a life estate. Great stress has been laid in many opinions construing wills, where the question was between a life estate and a fee simple, on

the fact that the first named devisee was given absolute power to sell and dispose of the property, which power carries the fee unless the demise is, in express words, given for life only. [Green v. Sutton, 50 Mo. 186.] In the present will, instead of that power being granted to Mrs. Pratt it was withheld. She was prevented from selling the land and a restriction was laid on the right of her heirs to sell or incumber it for fifty years after the death of the testator. It is true this restriction is void as opposed to public policy (Kessner v. Philips, 189 Mo. 515, 88 S. W. 66) ; but though the law may reject it as an unwholesome restraint on the power of alienation, it may be taken into consideration as one circumstance throwing light on the intention of the testator. It is certain his intention was to prevent Mrs. Pratt from selling or mortgaging the land, and this argues that his purpose was not to give her the fee. It is true the restriction is inconclusive on this point; but whatever force pertains to the grant of power to freely dispose of the property, as an argument that a devise to which the power is annexed, is a devise in fee, is lost in the present instance. We may be sure, in view of the restriction on selling and mortgaging, that the testator intended the land should remain intact and undivided during the life of Mrs. Pratt and should pass to her heirs at her death. This view is still further enforced by the next sentence, which directed her to divide the land equally among her heirs, and directed, further, if she failed to do so, commissioners should be appointed to divide it. These sentences which occur in the devising paragraph, indicate the purpose of the testator was to give his daughter only a life estate with a remainder over to her heirs. The requirement of an equal division of the land among the heirs was incompatible with a purpose to give it to Mrs. Pratt in fee, for she was deprived not only of the power to sell or mortgage, but to devise it as she might wish. It is

true that in other paragraphs of the will, in which he made devises to other children and their heirs, the testator used the words "their direct heirs;" thus clearly signifying an intention to devise a life estate to the first taker with a remainder to the children. And in these paragraphs he laid the same embargo on the conveyance of the land for fifty years after his death, that he did in the clause devising to Mrs. Pratt, and directed a division of the land among the heirs of the first devisee; sometimes using the phrase "among his children" instead of "among his heirs." From this circumstance it might be argued that the testator knew how to create a life estate in his children with a remainder over to his grandchildren, and employed more appropriate language to accomplish his purpose than we find in the clause devising to Mrs. Pratt. And no doubt there is force in this argument. On the other hand there is some force in the argument that he used the words "children" and "heirs" interchangeably. But these are minor indications of the testator's intention, which is to be gathered from the whole will; and we think the controlling indications are that he expressly forbade the plaintiff and the other devisees to sell or mortgage their portions, and directed them to divide them equally among their children, with provisos that if they failed to carry out this direction, commissioners should be appointed to carry it out. In Cross v. Hock, 149 Mo. 352, 50 S. W. 786, the widow contended she took a fee simple estate under her husband's will, pointing to passages in the will suggesting that the testator knew how to create a life estate by proper technical words, and seeking to deduce the inference that he did not intend to create such an estate in the widow from his failure to use appropriate words. But this argument was rejected as inconclusive, because the will as a whole was drawn with the evident purpose to cre-

ate a life estate; and for the same reason we reject it in this case.

It would be useless to review elaborately the authorities cited in the briefs touching the point of law at issue, though we have read them all. They have been reviewed time and again by the Supreme Court in opinions which we will cite, and the differences pointed out between the words used in those devises which were held to pass an estate in fee simple, and the words used in devises held to pass only a life estate to the first devisees with remainders over. Therefore our examination of the cases will be concise. Perhaps they are not entirely consistent, but we think most of them may be reconciled by careful attention to the language employed in the wills construed. When the estate given to the first devisee has been regarded as a fee simple, it will be found either that it was given unqualifiedly and by proper technical words, to the first taker as an estate in fee simple, and in a subsequent part of the will there was an attempt to cut down the fee to a life estate and limit a remainder over; which cannot be done without express words, or at least an unmistakable intention (Yocum v. Siler, 160 Mo. 281, 298, 61 S. W. 208; Sevier v. Woodson, 205 Mo. 202, 104 S. W. 1); or it will be found that though terms were used which might, standing alone import only a life estate in the first devisee, there were united with these words other words conferring power to dispose of the entire estate—an authority incompatible with the intention to devise no more than a life estate to the first taker; or else some other phrase was used which clearly imported that the entire fee was devised instead of a freehold for life. We are cited by counsel for plaintiffs to the following cases as supporting their proposition that Mrs. Pratt took a fee simple under her father's will. [Small v. Field, 102 Mo. 104, 14 S. W. 815; Yocum v. Siler, 160 Mo. 289; Roth v. Rauschenbush, 173 Mo. 582, 73 S. W.

664; Roberts v. Crume, 173 Mo. 572, 73 S. W. 662; Young v. Robinson, 122 Mo. App. 187, 99 S. W. 20.] An attentive reading of those cases will reveal either that the wills construed gave the property devised to the first devisees and his or her children, without more, as in Small v. Field, 102 Mo., supra; or that the property was given absolutely to the first devisee with merely a proviso that if he died without issue the land should pass to other named devisees, as in Yocum v. Siler, 106 Mo., supra; or that the property was given to the first devisee and his or her heirs on some subsequent condition to be performed by them, as in Roberts v. Crume, 173 Mo., supra; or that there was an expressed, or clearly implied, power in the first devisee to dispose of the property as he saw fit, as in Young v. Robinson, 122 Mo. App. 187; or that the property was given to the first devisee, his heirs and assigns; thereby importing a power to dispose of it, as in Gannon v. Albright, 183 Mo. 238, 81 S. W. 1162. The words of the present devise are very different from those contained in any of the wills held by the Supreme Court to pass the fee simple to the first devisee, and bring this case within the scope, not of the authorities cited for plaintiffs, but of the following decisions of the Supreme Court: Chiles v. Bartleson, 21 Mo. 344, in which there was a devise to the testator's wife, with a proviso that the bequest given to the wife should, at her death, be equally divided among the testator's four children; Russell v. Eubanks, 84 Mo. 83, where there was a restricted power of sale given to the first devisee, and Bean v. Kenmuir, 86 Mo. 666, in which the land was deeded to the first devisee for her sole use and benefit, to have and to hold . . . to her and her heirs and assigns thereafter, and in case of the death of the first devisee, then to pass with all its rights and privileges to her husband; Harbison v. James, 90 Mo. 411, in which the will gave the testator's widow all the prop-

erty, real and personal, with power to sell and re-invest any part she might desire *for her separate use and benefit,* leaving the remainder existing at the time of her death to his three daughters; that is to say, only a limited power of disposition was given to the widow; Munro v. Collins, 95 Mo. 183, 7 S. W. 461, in which practically the same limited power of disposition was conferred on the widow; Schorr v. Carter, 120 Mo. 409, 25 S. W. 538, in which the property was devised to the wife without any express power of disposition, but with a proviso that at her death whatever property had been given her should be equally divided among her and the testator's relatives or heirs; McMillan v. Farrow, 141 Mo. 55, 41 S. W. 890, in which the property was given absolutely to the testator's widow with full power to dispose of all or any part thereof at her option, but with a clause limiting the remainder as the testator's property ("my property") to other devisees after the death of the widow; which the Supreme Court said signified that the testator regarded his wife's own ership as not extending beyond a life estate; Cross v. Hoch, 149 Mo. 325, 50 S. W. 786, in which the property was limited after the death of the testator's wife to whom the property was expressly given for life, to his daughter and her heirs; but to be subject to the control of a trustee for the use of the daughter, with a direction that if she died without children, it should be divided among the testator's other daughters. It was held the will showed a clear intention not to give the daughter first named a fee simple estate, but only a life interest, with a limitation over at her death to her children. The Hoch case bears strongly on the proper construction of the present will, both on the question of whether it vested only a life estate in Mrs. Pratt, and the further point that the word "heirs" may be taken to mean "children" when the entire will and the facts attending

130 App.—13

its execution, make that its natural meaning.    The case of Dozier v. Dozier, 183 Mo. 137, 81 S. W. 890, is also analogous.  In said cause the testator, by a clause of his will, gave the bulk of his estate, consisting of stocks, to a trustee with unlimited power to sell and reinvest, and instructed the trustee to pay the dividends to certain beneficiaries, providing that on the death of any one of the beneficiaries, his or her descendants should be entitled to his or her share, free from the trust; and, further, that if any beneficiary died without descendants, the part of such beneficiary should go into the residuum of the estate and the residuum should go absolutely to the beneficiaries of the estate.    It was held the will created a life estate in the stock for the benefit of the beneficaries named, and that on the death of one of them his widow had no dower therein.    And such was the decision though in other clauses of the will the testator had devised life estates in express and technically appropriate words.

In our opinion the purpose of Mrs. Pratt's father to devise her only a life estate is perfectly clear from the language of the paragraph containing the devise and, therefore, the judgment is reversed and the cause remanded.    All concur.