Fickle *et al. v.* Snepp.

No. 11,308.

FICKLE ET AL. *v.* SNEPP.

WILL.—*Schedule.*—*Identification.*—A schedule signed by a witness to a will can not be regarded as part of the will, unless it is in some way identified.

SAME.—*Promissory Notes.*—*Identification in Will.*—Where notes, payable at the death of the testator, were folded up with his will and remained in his possession at the time of his death, and were clearly and fully identified, they formed part of the will.

SAME.—*Delivery of Notes.*—It was not important that there had been no delivery of the notes. Their existence as a writing of a character that could be incorporated in the will, and their identification, satisfy all requirements.

DECEDENTS' ESTATES.—*Claims Against.*—*Assets.*—Claims against an estate may be allowed without inquiring whether they belong to a preferred class, or whether there are assets to pay them.

SAME.—*Legacy.*—*Probate Jurisdiction.*—*Payment of Debts.*—*Administrator.*— A claim for the allowance of a legacy may be presented in the court having probate jurisdiction as a claim against the estate, but if the payment of all debts against the estate is not alleged, some reason for appealing to the court for the establishment of the legacy must be shown, and also some wrong on the part of the administrator.

From the Shelby Circuit Court.

*N. B. Berryman, R. W. Wiles, T. B. Adams* and *L. T. Michener*, for appellants.

*B. F. Love, A. Major* and *H. C. Morrison*, for appellee.

ELLIOTT, C. J.—The complaint of the appellee was filed against the administrator with the will annexed, of the estate of John Snepp, deceased, and seeks to enforce payment of a legacy alleged to have been bequeathed to the claimant.

A note is set forth in the complaint, signed by the testator,. and containing, among others, the following provision : " On the day of my death I promise to pay Joseph H. Snepp seventeen hundred dollars." This note was one of a series of five, signed by the testator, and made payable to his children. They were folded up with the will, and were in the testator's possession at the time of his death. It is averred that " a will was duly executed and probated," and that " in item first of said will the said testator did direct that his executors. should pay all of his just debts, including whatever might be due for principal and interest upon five notes which he had at the time of the, execution of the will made to five of his children, to wit, his daughter Elizabeth, his daughter Maria,. his sons William M., Joseph H. and David J. Snepp, for the purpose of making all his children equal in their advancements out of his estate." In the will, which is made part of the complaint, is the following :

" Item 1st. I direct that all of my just debts, including whatever may be due for principal and interest upon five notes, which I have this day made to five of my children, viz.,. Elizabeth, Maria, William M., Joseph H. and David J., for the purpose of making all my children equal in their advancements out of my estate, which said notes are payable at my death."

Following this is a provision for the payment of funeral expenses and for the sale of property, and then comes this provision : " I direct that the residue of my estate, which shall then remain in the hands of my executors, shall be equally divided among my children, viz., Elizabeth Hoskins, Maria Runshe, May J. Fickle, William M. Snepp and David J. Snepp, share and share alike, provided that if I shall at any time hereafter have to pay any money for any of my sons-in-law by reason of my liability therefor, the same shall be taken as part of the share in my estate of such daughter for whose husband I shall pay the same ; and provided, also, that if any of my said children shall die before I do, then the share of

such deceased child shall be paid to their legal heirs, issue of their bodies."

Following the signature of the testator and the attestation clause is a list of notes and amounts, to which is appended the following statement, signed by one of the subscribing witnesses: "The above is a statement of the notes made by John Snepp to five children for sums of money to make them all equal in advancements with May J. Fickle."

The schedule signed by the witness can not be regarded as part of the will. It is not in any way identified; there is not the slightest reference to it in any part of the instrument. It is true that schedules or other papers may be considered in connection with the will when they are plainly identified, but there is here no identification, either in express words or by fair implication; hence the paper can not be deemed part of the will. 1 Jar. Wills (5th Am. ed.), 37, 38, auth. n.; 1 Redf. Wills, 261, 262. We applied in *Pulse* v. *Miller*, 81 Ind. 190, the general principle which governs here to contracts, and the reason for its application to wills is stronger than that which operates in cases of contracts.

The notes which the testator signed at the time he executed the will are clearly and fully identified. There can not be the slightest doubt as to their identity. They are, therefore, to be regarded as a part of the will. This question was examined with great care and discussed with much ability in *Newton* v. *Seaman's Friend Society*, 130 Mass. 91; S. C., 39 Am. R. 433. In that case it was said by GRAY, C. J., in delivering the opinion of the court: "If a will, executed and witnessed as required by statute, incorporates in itself by reference any document or paper not so executed and witnessed, whether the paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will, and should be admitted to pro-

bate as such." The case from which we have quoted is also reported in 2 Am. Prob. Cases, 18, and copious notes are added giving many valuable cases. These authorities so fully settle the question that a discussion would be profitless. And we content ourselves with adding to the cases cited by the reporters the case of *Fosselman* v. *Elder*, 98 Pa. St. 159, and our own case of *Fesler* v. *Simpson*, 58 Ind. 83.

The appellant's counsel argue the case on the theory that as the notes were not delivered they were not in existence. This is a fundamental error. The notes as papers, as instruments of writing, were in existence, and as such they were fully identified by the will. It was not necessary that the notes should have been made effective by delivery; had that been so, there would have been no necessity for any will; the notes would have been in themselves effective without a will. The question is not whether the notes existed as valid promises to pay money, but whether they were in existence as papers or instruments capable of identification and capable of forming, by way of reference, part of the will of the testator. It matters not, as all the cases show, whether the paper did or did not create a binding obligation. If it had an existence as a writing and was of such a character as that it could be incorporated in the will, then the requirements of the law are satisfied. This is the rule declared in *Fesler* v. *Simpson, supra.*

In a supplemental brief counsel for appellant argue that it is not shown that the administrator had money in his hands sufficient to pay the legacy, and that for this reason the complaint is bad. The complaint does aver, that " there is now in the hands of the administrator the sum of $—— belonging to said estate, that the whole amount of said note is unpaid, and that by reason of the premises, and under the provisions of the will, he is entitled to have allowed him by said administrator, and to be paid out of the estate, the sum of $2,712.86." We think that in view of the liberal rules of pleading that obtain in claims against estates, and in view

of the rule that the remedy for uncertainty is by motion, the complaint must be upheld against an attack by demurrer. The practice of leaving blanks in a pleading is not a commendable one; on the contrary, it is one which good pleaders abhor. But we do not think it necessary for the claimant to show that there are assets sufficient to pay his claim before he can obtain an allowance. It is one thing to obtain an allowance and another thing to obtain a direction for the payment of the claim.

Claims may be allowed without inquiring whether there are assets sufficient to pay them, or whether they are or are not members of a preferred class. The allowance comes first; the direction as to payment comes afterwards. The statute fixes the order of priority of claims, and this the courts can not change. *Jenkins* v. *Jenkins,* 63 Ind. 120. All that a complaint need do is to state facts showing a right to an allowance; it need not anticipate defences, nor show the existence of assets.

The English rule is that a legacy can not be recovered in an action at law, but may be enforced by a suit in equity. The American cases are not harmonious, but there are very many in favor of the rule that an action at law will lie for the collection of the legacy. 3 Williams Ex. (6th Am. ed.), 2046, auth. n. Under our statute it can not be important to inquire whether the remedy is at law or in equity, for if facts are stated warranting a recovery, a recovery will be awarded, no matter whether the case made is cognizable in equity or at law. The object of our statute governing the settlement of decedents' estates is to keep all matters concerning the estate in the court having probate jurisdiction, and we think it was proper to institute this proceeding in the court of probate jurisdiction, and to give it the form of a claim against the estate.

We are referred to the cases of *Crist* v. *Crist,* 1 Ind. 570, *Highnote* v. *White,* 67 Ind. 596, and *Gould* v. *Steyer,* 75 Ind. 50, as sustaining appellant's contention. The two cases first

named were for the recovery of specific things, and the rule applicable in such cases is very different from that which prevails where all that is sought is to establish a claim to a legacy by having it allowed. *Branch* v. *Holcraft*, 14 Ind. 237, and *Rapp* v. *Matthias*, 35 Ind. 332, cited in *Highnote* v. *White*, *supra*, do not touch the question here under discussion. In *Gould* v. *Steyer*, *supra*, the action was not against the administrator, but against the legatees, and the language used in the opinion is applicable to such a case as that, but not to a case like this. The reason that *Gould* v. *Steyer*, *supra*, is well decided, is because as long as the matters of the estate are unsettled, the administrator, and not the heirs or legatees, must sue, and this is what is decided in *Fillingin* v. *Wylie*, 3 Ind. 163. The language in *Gould* v. *Steyer*, *supra*, must be limited to the facts of that case. We do not find any case warranting the conclusion that a legatee is bound to aver that the administrator has assets, or that he is in all cases bound to wait until the estate is finally settled and the administrator discharged before he can have the amount of the legacy established by an order of allowance, and we are satisfied that there is no reason for such a conclusion. The cases cited by the appellants all agree that it is the duty of the administrator to pay the legacy; and if this be true, it would seem clear that this duty should be performed while the representative capacity existed.

There is a defect in the complaint which compels a reversal. The will fixes the right to the legacy, and makes it the duty of the administrator to pay it. *Heady* v. *State, ex rel.*, 60 Ind. 316, *vide* p. 323. But he is not bound to pay it until all debts of the estate have been paid. Story Eq., section 555. He may, therefore, rightfully delay payment, and in doing this does no wrong, and if he does no wrong, then he is not liable to an action. We suppose no one doubts that before an action of any character can be maintained, it must appear that the defendant was in the wrong. In this case it does not appear that there was any denial of the appellee's claim; for

aught that appears the administrator may have fully conceded its validity. The complaint should show in such a case as this that the legatee's claim was denied by the administrator. It is upon this principle that the cases rest which hold that a demand must precede the action. 3 Wait Actions and Def. 260; 3 Williams Ex. (6th Am. ed.), 2046, auth. n. A complaint which does not show a payment of all debts must show, in some form, that there is reason for appealing to the court to establish the legacy, and must also show that there is some wrong on the part of the administrator. For the defect in the complaint pointed out by us the judgment is reversed.

Filed Oct. 10, 1884.