# GAINES M. BROWN et al. v. C. D. B. TUSCHOFF, Appellant.

### Division Two, June 20, 1911.

1. **WILL: Unambiguous: Oral Evidence.** Under no circumstances is oral evidence receivable to contradict or alter the plain terms of an unambiguous will when those terms are used in their ordinary and usual sense.

2. **———: ———: Limitation Over: Lots Devised by Different Clauses.** The will by its first clause gave to a grandson's widow and her child five dollars; by the second, testatrix declared that a son-in-law "shall be entitled to enjoy during his natural life lots one and two;" by the third clause, that at her death, "my grandchildren, Louie and Gaines M. Brown, shall be entitled to said lots one and two, subject to the life estate" of said son-in-law, "and said Louie and Gaines M. Brown shall also at my death be entitled to lot four, and they said Louie and Gaines M. Brown shall also be entitled to the remainder of my estate of whatever kind it may be at my death, and in case either one (Louie or G. M.) should die leaving no heirs, the other shall be entitled to it all." *Held*, that the son-in-law having died after testatrix, and the granddaughter (Louie) having thereafter died without issue, Gaines M. Brown, under the will, took all the estate, and the limitation over applied not only to lot four and to the remainder, but to lots one and two.

3. **———: ———: Heirs May Mean Issue.** The word "heirs" and the word "issue" are convertible terms in a will when such a construction is necessary to carry out the testator's paramount intention as gathered from the entire instrument. Where the will as a whole shows a fixed purpose to devolve testatrix's entire estate upon two devisees to the exclusion of all other direct descendants, as the will in this case does, it will be held that the word "heirs," used in the sentence, "And in case either one (Louie and G. M.) should die leaving no heirs the other shall be entitled to it all," means issue, and that when Louie died without issue G. M. took the entire estate devised to both.

4 **———: Limitation Over: Amicable Partition: Warranty Deed by Mistake for Quitclaim: Reformation.** Where the will gave the lots to two grandchildren, and provided that "in case either one should die leaving no heirs the other shall be enti-

tled to all," and after testatrix's death they made an amicable partition, and employed a mutual agent to draw up quitclaim deeds conveying their individual interests to each other, and the agent drew up a quitclaim deed to plaintiff for his sister to sign, and, having no other blank form of a quitclaim, used the form of a warranty deed, erasing the *habendum* clause, supposing that would make it a quitclaim, and plaintiff signed it, it will at his suit be reformed to be a quitclaim as against his sister or her grantee who took with notice.

5. ———: ———: ———: ———: **Innocent Purchaser.** And where the sister, after such amicable partition, and after such mistaken warranty deed from plaintiff to her, conveyed to defendant and died without issue, and there is substantial evidence that defendant bought the property from her (his wife) with actual knowledge of the fact that the deed to her from plaintiff was intended to be only a quitclaim for the partition of the land, although by mistake a warranty form had been used, the deed will be reformed to speak the real agreement between the parties, and defendant will not be held to be an innocent purchaser, for value, without notice. That defense is an affirmative one and must be pleaded.

6. **AMICABLE PARTITION: Deeds: Warranties: Executory Devise: Quitclaim Deeds.** Deeds made in a friendly partition, the intention of each grantor being to convey only his individual interest, neither create any new titles, nor carry any warranties. So that a will devising certain lots to a brother and sister, and providing that "in case either should die leaving no heirs, the other shall be entitled to it all," created an executory devise, and deeds executed by the one to the other, in amicable partition, conveyed only the individual interest of each, and when the sister died without issue the title to the lots so conveyed by the brother to her vested in him; and if the deeds were quitclaims, a conveyance by her to defendant conveyed nothing, but the title reverted to her brother.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Wilson Cramer* for appellant.

(1) A court of equity will not decree the reformation of a written instrument, unless there was a mutual mistake. The mistake of the scrivener is not a mutual

mistake in the absence of proof that he was the agent of both parties to the contract. Benn v. Prichett, 163 Mo. 572; Dougherty v. Dougherty, 204 Mo. 228. (2) In the case at bar it is not shown by the evidence or even alleged in the petition that the justice of the peace who wrote the deed in question and made the alleged mistake was the agent of the grantee Louie Brown. (3) The petition fails to charge that there was a mutual mistake as to the deed under consideration and therefore does not state a cause of action in the first count. Neither by the allegations of the petition, nor by the proof, is Louie Brown connected with the transaction in any manner, excepting by the fact that she executed a quitclaim deed to her brother Gaines M. Brown for part of lots 1 and 2. Brocking v. Straat, 17 Mo. App. 305. (4) Under the facts of this case it was immaterial whether the deed from Gaines M. Brown to Louie Brown was a quitclaim in form, or a statutory warranty, or whether his interest was a vested, or a contingent remainder. Either form of deed would have passed his interest in the land. A quitclaim deed conveys such title as the grantor has. Johnson v. Johnson, 170 Mo. 49; Chew v. Kellar, 171 Mo. 225. (5) Under the 3d clause of the will of Diza Wills her two grandchildren, Louie and Gaines M. Brown, took a vested remainder in lots 1 and 2. Tindall v. Tindall, 167 Mo. 225. (6) The concluding paragraph of clause 3: "And they the said Louie and Gaines M. Brown shall also be entitled to the remainder of my estate of whatsoever kind it may be at my death, and, in case either one (Louie or J. M.) should die leaving no heirs, the other shall be entitled to it all," contains a separate and distinct bequest of the residue of the estate and has no reference to the devises contained in the first and second paragraphs. They "shall be also entitled to the remainder of my estate, of whatsoever kind it may be at my death, etc., and in case either one should die leaving no heirs,

the other shall be entitled to it all.'' (7) A vested remainder is transferable. Byrne v. France, 131 Mo. 639; Tindall v. Tindall, 167 Mo. 218. (8) So is a contingent remainder vendible. Godman v. Simmons, 113 Mo. 122; Sikemeiers v. Galvin, 124 Mo. 367; Brown v. Rogers, 125 Mo. 392. (9) Defendant is a purchaser for a valuable consideration without notice, and, as to him, the court below had no power to reform the conveyance. 1 Story's Eq. Jur. secs. 139 and 165; Sicher v. Rambousek, 193 Mo. 129.

*W. H. Miller* and *T. D. Hines* for respondent.

(1) The expression at the end of clause 3 of the will, which reads, ''and in case either one (Louie or G. M.) should die leaving no heir,'' etc., was intended to mean and should be construed to mean should Louie or G. M. die without issue. The word ''heirs'' was clearly intended to mean issue, children, direct descendants, etc., and should be so construed. Waddell v. Waddell, 99 Mo. 345; Maguire v. Moore, 108 Mo. 273; Chew v. Keller, 100 Mo. 368; Ringquist v. Young, 112 Mo. 33; Faunning v. Doan, 128 Mo. 330; Clarkson v. Clarkson, 125 Mo. 381; Roberts v. Crune, 173 Mo. 579. (2) Louie Brown acquired no new, no different or additional title or estate in the land by the partition deed, for partition deeds simply destroy the unity of possession without conveying a new title. Whitsett v. Wammack, 159 Mo. 14; Harrison v. McReynolds, 183 Mo. 539; Palmer v. Alexander, 162 Mo. 127; Snider v. Elliot, 171 Mo. 362; Propes v. Propes, 171 Mo. 407; Sharp v. Stewart, 185 Mo. 529; Cottrell v. Griffith, 57 L. R. A. 332, note. (3) Under the will the brother and sister each took a fee simple estate in the land, subject to being divested by dying first and without issue. And Louie Brown could convey no greater estate in the land than she owned. Gannon v. Albright, 183 Mo. 238; McCune v. Goodwillie, 204 Mo. 337; Gannon v. Pauk, 200 Mo. 95. (4) As a partition deed does

not confer upon the grantee any greater title to the portion allotted to him than he had in the undivided estate, a clause of warranty contained in a partition deed will not by estoppel confer any greater title. Davis v. Agnew, 2 S W. 376; Chace v. Gregg, 32 S. W. 520; Harrison v. Ray, 11 L. R. A. 722. (5) Construing the partition deed from its four corners, it should be construed as a quitclaim deed, or deed of release. (6) Defendant had actual knowledge of the mistake in this partition deed, long before he obtained his deed from Louie Brown. (7) Counsel for defendant says the scrivener who made the mistake was not the agent of Louie Brown in preparing the deeds for signature. The evidence is clear that he represented her quite as much in preparing the deeds as he did in performing the actual work dividing the land. She accepted his work in making the division, and also in the preparation of the deeds. They, Monroe and Louie, must both be held to have assented and consented to the division, and to each step leading to the partition; so that the mistake of the scrivener was a mutual mistake. (8) Louie did not take an absolute fee simple estate as claimed by counsel for defendant. The devise is all in one clause, and all in one sentence; and the words, "if either should die without heirs," is a part of the devise itself, and not an ineffectual effort to cut down a fee simple estate previously given.

## STATEMENT.

BOND, C.—The plaintiff (a person of unsound mind, suing by his guardian) sues to reform a deed, and joins a count in ejectment for the property described in the deed. The action is against the surviving husband of Louie Brown, who died childless about eighteen months after her marriage to defendant.

The evidence tended to prove that the maternal grandmother of plaintiff and of his deceased sister,

Louie Brown, died in 1901, having first made and published the following will:

"Know all men by these presents that I, Diza Wills, of the county of Cape Girardeau and State of Missouri, being of sound and disposed mind, do make and publish this my last will, thereby revoking any other by me made.

"First, at my death I give to my grandson's Lucius Brown's heirs, to-wit: his widow, Martha Brown, and child, Alva O. Brown, five dollars.

"Second, at my death my son-in-law, Marcus Brown, shall be entitled to enjoy during his natural life and receive the benefits of lots one and two, as set out in the report of the commissioners appointed to make partition among the heirs of John Wills, deceased, and purchased by me at the sheriff's sale of land in said partition suit at the August term of the circuit court of Cape Girardeau county, in said State of Missouri.

"Third, at my death and after all of my just debts is paid, and a suitable tombstone erected at my grave and all other expense is paid, my two grandchildren, Louie and Gaines M. Brown, shall be entitled to said lots one and two, subject to the life estate of Marcus Brown as above set forth, and said Louie and Gaines M. Brown shall also at my death be entitled to lot four, as shown in said commissioner's report, as aforesaid, and purchased by me at said sheriff's sale at the time and place aforesaid, and they said Louie and Gaines M. Brown shall also be entitled to the remainder of my estate of whatsoever kind it may be at my death, and in case either one (Louie or G. M.) should die leaving no heirs, the other shall be entitled to it all.

"Fourth, I do appoint Louie and Gaines M. Brown as executors of this my last will, or in case they do not wish to act, they or either of them shall be empowered to choose some one to act as executor.

"In witness whereof, I have hereunto set my hand and seal, this 10th day of March, A. D. 1892."

That the life tenant of lots one and two referred to in said will died before this suit; that after his death the plaintiff (not being then *non compos*) and his sister, Louie Brown (then unmarried) took the judgment of three disinterested persons as to the value of said lots, and executed mutual deeds, prepared by one of said persons, for the severance of their ownership of said lands; that the deed from the plaintiff to his sister was in form a statutory conveyance, except that the warranties of the *habendum* clause were stricken out. The evidence tends to show that this happened because the scrivener had only one blank quitclaim and was compelled to use a blank statutory form for the other deed, and that he thought he had converted this into a quitclaim by simply erasing the warranties contained in the *habendum* clause. The evidence tends to show that the parties to the deeds (plaintiff and his sister) were informed of this, and that they intended to execute two partition deeds; that plaintiff was an unlearned man and relied wholly upon the statements of the draftsman that he was making a quitclaim deed to his sister; that subsequent to this partition, the sister, Louie Brown, married the defendant, and on the day of her marriage conveyed to him her portion of the partitioned land and other land; that defendant had notice as to the previous partition and exchange of deeds between plaintiff and the said Louie Brown; that defendant paid no substantial consideration for the deed to him; that his wife died without issue in 1905.

The trial court, to whom both counts of the petition were submitted, rendered judgment for plaintiff, correcting his deed to his sister so as to make it a quitclaim and not a warranty deed, and adjudging to plaintiff the possession of lots one and two. Defendant perfected his appeal to this court.

## OPINION.

I. This case turns on one question. What was the nature and extent of the estates of plaintiff and his sister, Louie Brown, devised to them under the third clause of the will of their grandmother, Diza Wills?

If the will within its four corners is unambiguous, it must be interpreted without the aid of extraneous evidence, which can only be considered when the terms of the will are of doubtful import, and then only to explain its latent meaning. Under no circumstances is such evidence receivable to contradict or alter the plain terms of a will or deed when used in their ordinary and usual sense. [Krechter v. Grofe, 166 Mo. 385; Clotilde v. Lutz, 157 Mo. 439; Davis v. Davis, 8 Mo. 56.]

The third clause of the will of Diza Wills is wrapped up in a single sentence, which makes only two references to any other part of the will—the one referring to a life estate (now terminated) in lots one and two (the subject-matter of the present suit); and the other referring to the source of the testatrix's title to lot four, also devised to plaintiff and his sister. This clause of the will may be considered apart from any other portions of the will, and it may be read and interpreted according to the language in which it is expressed, unless that language is so doubtful, uncertain and obscure as to require construction by reference to the will at large or other competent evidence in order to bring out its latent meaning. The third clause shows on its face a paramount intent to devise all of the estate of the testatrix to two persons—the plaintiff and his sister. In carrying out this intent it specifies, first, that these two persons "shall be entitled" to lots one and two (subject to a life estate); second, "and shall be entitled to lot four" (reciting how it was acquired); and, third, "and shall be also entitled" to the remainder of her estate. Separated

only by a comma from these specifications are the following words, ''and in case either one (Louie or G. M.) should die leaving no heirs the other shall be entitled to it all.'' These words conclude the third clause.

The collocation of these three separate devises; the use in each of them of the same terms to grant title, i. e., ''shall be entitled;'' the repetition in each of them of the names of the plaintiff and his sister; the fact that each of them, as well as the subsequent clause limiting the devises in case of the death of either of the devisees, is separated only by a comma; the evident fact that the first and second specifications mentioned all of the estate which the executrix could call to mind, leaving the third specification to cover whatever else might turn up; the further fact shown by the first clause of the will that the testatrix intentionally and by name excluded her other descendants (heirs of her grandson) from any participancy in her estate—all, taken together, render it certain that it was the purpose of the testatrix to devolve her entire estate upon these two persons (plaintiff and his sister), and to exclude all other descendants of the testatrix from any share, part or lot therein, and render it equally certain that when she affixed the limitation over in favor of the survivor of these two persons in case of the death of either, she intended that limitation to apply fully to the first and second devises, containing an enumeration of her estate, as well as to the third devise intended to embrace whatever might remain.

Our conclusion is that the will within its four corners demonstrates that such was the intention of the testatrix, and that when she added the clause containing the limitation over she unmistakably meant that it should apply to the entire estate devised in the third clause of her will and mentioned in the three descriptions contained in said clause.

II.   The next question is, what quality and quantity of estate was created in plaintiff and his sister, Louie Brown, under the third clause of the will of their grandmother?

The terms of the limitation over are, to-wit: "And in case either one (Louie or G. M.) should die leaving no heirs the other shall be entitled to it all." There is nothing in the record which shows that the testatrix at the time of making her will was apprised of the technical meaning and import of the word "heirs" as implying others than the direct descendants or issue of the two persons named. The will as a whole showed a fixed purpose to devolve the entire estate upon these devisees to the exclusion of all other direct descendants of the testatrix. The word "heirs" and the word "issue" are convertible terms in a will when such a construction is necessary in order to carry out the paramount intent of the testatrix. [Roberts v. Crume, 173 Mo. 579; Fanning v. Doan, 128 Mo. 323; Maguire v. Moore, 108 Mo. 273; Chew v. Keller, 100 Mo. 369; Waddell v. Waddell, 99 Mo. 345.]

This intent when once ascertained controls and overrides all expressions in a will tending to show a subordinate purpose. It is a settled rule in the construction of wills that the expressions of a secondary intent will be construed so as to harmonize with the carrying out of the primary intent of the testatrix.

In view of the light shed upon the controlling idea of the testatrix in this case by all the provisions of her will, we hold that in using the word "heirs" in the limitation over of the devised estate, she plainly meant "issue" or direct descendants of the persons named. As thus construed, the third clause of the will cast upon Louie Brown a defeasible fee with a limitation over in favor of her brother upon the contingency of her death without issue or direct descendants; and since the record shows that this contingency has happened, he became entitled to said estate at the time of

her death by a valid executory devise. [Yocum v. Siler, 160 Mo. l. c. 295; Gannon v. Pauk, 200 Mo. l. c. 96.]

III. Defendant assigns as error the action of the trial court in adjudging, under the first count of plaintiff's petition, that the deed containing the statutory terms "grant, bargain and sell" was only a quitclaim. The deed in question was drawn by a scrivener as one of the conveyances necessary to sever the possession of two tenants in common under an agreement to partition their estate. On this point he testified: "Q. Mr. Ruff, after you had made this division or agreed on this division, what then were you instructed by the heirs to do? A. To make a quitclaim deed to it; each should make a quitclaim deed to the other for their interest in this land." And, further, on cross-examination: "Q. The young woman, Miss Louie Brown, gave no directions about the deed? A. No, sir; it seems they submitted the thing to the commissioners. Q. And with the understanding that quitclaim deeds were to be exchanged you made these two deeds? A. That was the understanding; the deeds were to convey undivided interests. . . . Q. Do you recall any conversation whatever with Miss Louie Brown, the young woman, in regard to it? A. No, sir; only I explained to each of them they were conveying their undivided interest to each other."

The testimony of the scrivener further shows that the deeds were accordingly made, and were accepted by the two parties. This testimony and the action of the parties in carrying out the transaction between themselves afforded ample basis for the finding by the trial court that the scrivener was the common agent of both parties, and that the using of a statutory deed for the conveyance from the plaintiff was an inadvertence contrary to the purposes and intention of both parties to the contract of partition.

The law on this subject has been well stated by GANTT, J., speaking for this division, as follows: "Courts of equity have from time immemorial exercised power to reform written instruments so as to make them speak the real agreements made between the parties in cases in which by the mistake or misprision of the scrivener the writing fails to do so, and it will exercise this power not only as between the original parties but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors or purchasers from them with notice of the facts." Citing cases. [Sicher v. Rambousek, 193 Mo. l. c. 129.]

This reformation of the deed was sought in order that its true character should be established as a mere conveyance *inter sese* between the parties to an amicable partition. Such deeds neither create any new title nor carry any warranties. [Propes v. Propes, 171 Mo. 408; Sharp v. Stewart, 185 Mo. l. c. 529; Whitsett v. Wamack, 159 Mo. 14; Palmer v. Alexander, 162 Mo. 127.]

We hold there was no error on the part of the trial court in decreeing a reformation of the deed as against defendant in this case, since there was substantial evidence tending to show that he bought the property from his wife with actual knowledge of the fact that the deed to her from plaintiff was intended to be only a quitclaim deed for the partition of the land.

For these reasons, we also hold that there was no error in the finding of the trial judge that the defendant was not an innocent purchaser for value without notice. That defense is an affirmative one and must be affirmatively proven as well as pleaded; the *onus* lies on the pleader. [Young v. Schofield, 132 Mo. l. c. 663, and cases cited.]

The result is the judgment herein is affirmed. *Roy, C.,* concurs.