# MARGARET DECHERD WHITE v. GEORGE W. READING et al., Appellants.

### Division Two, April 7, 1922.

1. **WILLS: Reference to Extrinsic Documents.** Where testator, in his will, duly executed and attested, aptly referred to and described certain deeds, signed and acknowledged contemporaneously therewith by testator and his wife, such deeds thereby became incorporated into and formed parts of such will.

2. ———: ———: **Probate.** It was not necessary that such deeds should have been presented to the probate court and formally and expressly certified as probated, inasmuch as the probate of the will set up and established them as parts of the will itself, by force of the reference and consequent incorporation of them therein.

3. ———: ———: ———: **Identity Established.** Where it appeared that such deeds, after having been signed and acknowledged by testator and his wife, were by him delivered, along with his will, duly executed and attested, to the scrivener who drew all such documents, and such deeds and will were by the scrivener sealed up in an envelope, which was placed and kept in a locked box belonging to testator, in the bank of which the scrivener was cashier, the key to which box was carried by the testator until his death and was found in his pockets after his death, and such envelope was not opened nor the seal broken until after testator's death, and such deeds, collectively, conveyed testator's land to his children, subject to the identical provision recited in his will, the identity of such deeds was sufficiently established.

4. ———: ———: ———: ———: **Case Adjudged.** William Reading had two sons and two daughters living and a granddaughter, the plaintiff, only child and heir of a deceased daughter. He desired to give plaintiff $2500, payable after the death of himself and wife, and to parcel his land among his surviving sons and daughters, reserving the land during the life of himself and wife. He applied to a banker to draw his will and some deeds to carry out his desires. The banker drew four deeds, each executed by testator and his wife as parties of the first part and each conveying certain described land to one of the children as party of the second part. Each deed contained this clause: "This deed is made in lieu of will and is good and valid only after the death of the

parties of the first part." The banker also drew the testator's will, the fifth clause of which read: "I have made, in lieu of will, deeds to my lands, delivering said deeds to my children, as they are written, subject to provisions written in the body of said deeds, making them good and valid only after the death of the said William and Susan Reading, the parties of the first part thereto. However, any improvements the said party of the second part in said deeds mentioned, may desire to make at the expense of said party of the second part, is hereby allowed for their use and benefit, and each and everyone of the said party of the second part may cultivate, pasture, and otherwise use such lands as in said deeds mentioned after the death of the testator, as long as the said Susan Reading shall live, provided, however, that each one of the said parties of the second part shall pay to said Susan Reading, their mother, such sums or rentals, annually as she and they may agree upon, for her support, benefit, use, maintenance and comfort of life; so that the personal property found under this will, and at my death, shall not be lessened nor diminished, at the time of her death." The deeds and the will were all executed at the same time and were delivered to the banker, who sealed them all up in an envelope, which was placed in the testator's locked box in the bank, the key of which box testator kept until his death, and there remained unopened until after testator's death. Shortly after the deeds were made, the grantees took possession of their respective lands, made improvements thereon, paid the taxes and paid rent to the testator up to the time of his death. *Held*, that these deeds were testamentary in character and inoperative to convey title during the life of testator, but that, by reference, they were incorporated in and became operative as a part of the will itself, upon the probate thereof, and vested the titles accordingly in the grantees therein named as beneficiaries under the will.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Wool-folk*, Judge.

REVERSED AND REMANDED (*with directions*).

*David A. Ball, Guy M. Wood* and *Pearson & Pearson* for appellant.

(1) By his reference to the deeds, in his will, each having been executed at as near the same time as possible—the deeds first, then the will—each executed for

one and the same purpose, the deeds should be incorporated, and read in, and as a part of, the will. His intention should be made to prevail. Harvey v. Choteau, 14 Mo. 595; Allen v. DeGroodt, 105 Mo. 451; Willard v. Darrow, 168 Mo. 668, 672; Murphy v. Clancy, 177 Mo. App. 429; Tonelle v. Hall, 4 N. Y. 144; Brown v. Clark, 77 N. Y. 377; Fesler v. Simpson, 58 Ind. 82; Copeland v. Summers, 35 N. E. (Ind.) 514; Trust Co. v. Moore, 50 N. E. (Ind.) 73; Bryan's Appeal, 68 L. R. A. 353; 40 Cyc. sec. 5, p. 1421, Note 66. (a) Ordinarily all documents made at the same time, and relating to the same transaction should be read and construed together. Jennings v. Todd, 118 Mo. 304; Realty Co. v. Geren, 185 Mo. App. 454; Waldemeier v. Loebig, 222 Mo. 552; Agan v. Shannon, 103 Mo. 669; Mercer v. Railroad Co., 54 Mo. 512; Priest v. Chouteau, 85 Mo. 409-10. (b) When several instruments are executed at the same time, in relation to the same subject-matter, to accomplish a common purpose, and the execution of all is known to every party to either instrument, they should be construed as one contract, though the parties to each instrument are not the same. McDonald v. Wolff, 40 Mo. App. 302, 309; Advertising Co. v. Publishing Co., 146 Mo. App. 98; Morey v. Clopton, 103 Mo. App. 379-80; Sexton v. Anderson, 95 Mo. 382; Houck v. Frisby, 66 Mo. App. 19-20. (c) The Pole Star of interpretation of a will is the intention of the testator; and, it should be so construed as to carry out the intention of the maker. To discover the latter, courts are not limited to the four corners of the instrument, but may be enlightened *aliunde* as to the conditions surrounding the testator. McCune v. Goodwille, 204 Mo. 337; Church v. May, 201 Mo. 369; Briant v. Garrison, 150 Mo. 667-8; Hewitt v. Steele, 118 Mo. 573. (d) In determining the intention and meaning of the testator, courts will consider the will as a whole, giving to each and every part of it due and proper consideration; and, so far as possible, put themselves in the place of testator, and will read all the directions in the place of the testator, and will read all the directions

in the light of his environments at the time the will was
executed.   Tisdale v. Prather, 210 Mo. 407-8; Tebow
v. Dougherty, 205 Mo. 320; Jennings v. Todd, 118 Mo.
304; Willard v. Darrah, 168 Mo. 668-9, 672.   (2)   One
of the cardinal rules invoked by courts in the construc-
tion of wills is, that a testator intended to dispose of his
entire estate, and not to die intestate either as to the
whole or any part thereof; and the will should be so
construed.   McMahan v. Hubbard, 217 Mo. 637-8; Min-
iers v. Miners, 279 Mo. 617; Carr v. Dings, 58 Mo. 406-7;
Watson v. Watson, 110 Mo. 171-2; Farish v. Cook, 78
Mo. 220-1; Scott v. Etling, 224 Mo. 48-9; Gaines v.
Fender, 57 Mo. 346-7; Hurst v. VondeVelt, 158 Mo. 250;
40 Cyc. sec. B. p. 1409.   (3)   When, by mistake in draw-
ing deeds, they do not convey the estate intended by the
parties, they may be reformed to accomplish their in-
tention.   Bramhall v. Bramhall, 215 S. W. (Mo.) 769;
Corrigan v. Tierney, 100 Mo. 281; Maze v. Boehm, 220
S. W. (Mo.) 953-4; Wilhite v. Wilhite, 224 S. W. (Mo.)
449; Williamson v. Brown, 195 Mo. 331; Creasey v.
Alverson, 43 Mo. 22.   (a)   The court erred in excluding
the proffered testimony of the scrivener as to what the
grantor said at the time he instructed him to write the
deeds, or what directions he gave him as to how he wanted
the deeds written.   Brown v. Tuscoff, 235 Mo. 459; Bry-
ant v. Garrison, 150 Mo. 669; Terry v. Glover, 235 Mo.
547; Wilhite v. Wilhite, 244 S. W. 450; 20 Am. & Eng.
Ency. Law, sec. B. p. 821; Creasey v. Alverson, 43 Mo.
22; Riggs v. Meyers, 20 Mo. 244.   (b)   Every deed must,
if possible, be made operative.   This is an elementary
principle in the construction of deeds.   Peter v. Byrne,
175 Mo. 247; Hubbard v. Whitehead, 221 Mo. 681;
Thompson v. Thompson, 115 Mo. 64; Wimpey et al. v.
Ledford, 177 S. W. (Mo.) 303-4. (c) The evidence shows
conclusively, that the respective deeds were all delivered.
Crites v. Crites, 225 S. W. (Mo.) 992-3. (4) The deeds in
question are not, in the ordinary sense, a gift. They are in
a broader sense, a division of grantor's property; and,
are in every particular as solemn an act and obligation

between the parties, as if there was, and had been, a contract and sale for a valuable consideration.   Hutsel v. Crews, 138 Mo. 5;  Crawley v. Crafton, 193 Mo. 431; Partridge v. Partridge, 220 Mo. 325.

*Hostetter & Haley* for respondent.

(1)   The deeds are void for the following reasons: (a)   Where the instrument contains a clause (as in the case at bar) providing that the property is to pass to the grantee after the death of the grantor, this shows an intent not to convey a present interest and it is testamentary, and not being executed in accord with the statute relating to wills, it is invalid.   Goodale v. Evans, 263 Mo. 219;  Terry v. Glover, 235 Mo. 545;  Murphy v. Gabbert, 166 Mo. 596;  Griffith v. McIntosh, 176 Mo. 398; Coles v. Bedford, 232 S. W. 728;  Aldridge v. Aldridge, 202 Mo. 565; Givens v. Ott, 222 Mo. l. c. 411; 1 Alexander's Commentaries on Wills, p. 68;  Frederick's Appeal, 52 Pa. 338;  2 Devlin on Deeds, p. 1582, note 2;  Sneathen v. Sneathen, 104 Mo. 201;  Thompson on Wills, sec. 9; 1 Alexander's Comm. on Wills, p. 63, sec. 56.   (b)   Delivery during the lifetime of the grantor is essential to the validity of a deed even though the instrument be in proper form and contains no nullifying reservation or destructive clause with a hand pointing it out and emphasizing it.   Allen v. De Groodt, 105 Mo. 449;  Griffith v. Miller, 188 Mo. 327;  Peterman v. Crowley, 226 S. W. 944;  Wren v. Sturgeon, 184 S. W. 1036;  Coles v. Bedford, 232 S. W. 728.  (c)  We concede the rule to be that a deed delivered to a third person by the grantor, to be by such third person delivered to a grantee, even after the death of the grantor, may  constitute  good delivery.   Terry v. Glover, 235 Mo. 552;  Sneathen v. Sneathen, 104 Mo. 201;  Allen v. DeGroodt, 105 Mo. 442.   (d)   But in order to make such delivery good the grantor must part with dominion over it when he places it in the hands of such third person;  the deed must thereafter be beyond the power of recall by the grantor;

his right to control or interfere with the deed must cease. Coles v. Bedford, 232 S. W. 728; Mudd v. Dillon, 166 Mo. 119; Hamerslough v. Cheatam, 84 Mo. 20; Abbe v. Justus, 60 Mo. App. 300; Wren v. Sturgeon, 184 S. W. 1038; Burkey v. Burkey, 175 S. W. 624; Peterman v. Crowley, 226 S. W. 944; Huey v. Huey, 65 Mo. 689. (2) The deeds cannot be reformed for the following reasons, to-wit: (a) "Void instruments, where there is no evidence of accident or mutual mistake in the execution thereof, courts of equity have no power to reform so as to make them valid." Hedges v. Dixon County, 150 U. S. 192; Litchfield v. Ballow, 114 U. S. 192; Parrish v. Camplin, 139 Ind. 1; Bragoria County v. Bridge Co., 80 Fed. 10; Dickens v. Glenny, 27 Conn. 111; White v. Railroad Co., 13 Mich. 356. (b) Equity will not reform a voluntary conveyance at the instance of the grantee; the latter is merely the recipient of a bounty, which the grantor was not bound to make and not being bound to make he is not bound to perfect. 23 R. C. L., p. 344, sec. 38; Willey v. Hodge, 104 Wis. 81; Partridge v. Partridge, 220 Mo. 325; Anderson v. Scott, 94 Mo. 637; Brownlee v. Fenwick, 103 Mo. 428; Hutsell v. Crewse, 138 Mo. 1; Crawley v. Crafton, 193 Mo. 432; 23 R. C. L. p. 346, sec. 40; Mudd v. Dillon, 166 Mo. 110. (c) A mistake as to the legal effect of a deed is not sufficient ground for its reformation. Fowler v. Black, 136 Ill. 363, 11 L. R. A. 670; Atherton v. Roche, 192 Ill. 252, 55 L. R. A. 591, 54 L. R. A. 354; Norton v. Heighleyman, 88 Mo. 621; St. Louis v. Priest, 88 Mo. 612; Nelson v. Betts, 21 Mo. App. 219; Tesson v. Ins. Co., 40 Mo. 33; Parker v. Vanhoozer, 142 Mo. 621; Miller v. Powers, 4 L. R. A. 483, note; Griffin v. Miller, 188 Mo. 327. (d) In conveyances capable of being reformed (the deeds in the instant case not falling in that class), the mistake must be a mutual one in order to entitle the proper party seeking it to obtain reformation. Atkins v. Tomlinson, 121 Mo. 487; Bartlett v. Brown, 121 Mo. 353; Meek v. Hurst, 223 Mo. 688; Steinberg v. Ins. Co., 49 Mo. App.

255; Bracking v. Straat, 17 Mo. App. 305; Benn v. Pritchett, 163 Mo. 572; Griffith v. Miller, 188 Mo. 327; Parker v. Vanhoozer, 142 Mo. 621. (e) Equity will never relieve against the consequence of a mistake of law unmixed with mistake of fact. St. Louis v. Priest, 88 Mo. 614; Price v. Estill, 87 Mo. 386; Kleimann v. Geiselmann, 114 Mo. 445; Hendrix v. Wright, 50 Mo. 315. (3) A court of equity has no jurisdiction to reform a will on the ground of mistake by the draughtsman in drawing the same. Goode v. Goode, 22 Mo. 518. (4) If the testator had, as he did in the instant case, selected a means or method of transmitting title which was ineffective and made no attempt to devise the remainder interest in the lands by the will, the court cannot supply the clauses necessary to make the will carry the title instead of the broken-down deeds. In other words, the court cannot make the will for the testator; the court can only interpret and construe the instrument as made by the testator. Now, to arrive at the intent of the testator the instrument itself must be resorted to and all its language studied. Oral declarations of the testator or the scrivener cannot be heard to ascertain the meaning of the will. Otherwise, we would have a part of the will not in writing and resting on recollection of fallible individuals. Brown v. Tuschoff, 235 Mo. 456; Andre v. Andre, 232 S. W. 153; Korneman v. Davis, 219 S. W. 904; Wooley v. Hays, 226 S. W. 842; Jennings v. Brizeadine, 44 Mo. 335.

HIGBEE, P. J.—This is an action by the plaintiff, a granddaughter of William Reading, deceased, against the widow and the two sons and two daughters of the deceased, to determine title to about seven hundred acres of real estate lying in Pike and Ralls counties, and to partition the same. The court found the issues for the plaintiff, adjudging her to have an undivided one-fifth interest in said lands, from which the sons and daughters of the deceased appealed.

The first count of the petition avers that William Reading died on February —, 1920, at his residence in Curryville, Pike County, seized in fee of the said real estate; that he left surviving him his widow, Susan Reading, two sons and two daughters, the defendants George W. Reading, John T. Reading, Maggie V. Shannon and Nancy Briggs, and the plaintiff, she being the daughter and only heir of a deceased daughter of said William Reading, and that the plaintiff and the appellants are the only descendants and heirs of the said William Reading, deceased, and that they each own an undivided one-fifth of said real estate in fee, subject to the life estate of Susan Reading. That the appellants each claim to own exclusively a certain portion of said real estate under deeds purporting to have been executed by William and Susan Reading on April 24, 1913, conveying certain portions of said lands to each of said appellants, to the exclusion of plaintiff's undivided one-fifth interest therein. The petition describes the several tracts so claimed to have been conveyed to each of them, and avers that said deeds are invalid and do not in point of fact pass any title; that the infirmity and invalidity of said deeds can be more fully and effectually disclosed by extrinsic oral testimony and by matters *dehors* the record; that said deeds are recorded and are a cloud on plaintiff's title. The prayer is that said deeds be cancelled and that the court declare that plaintiff owns an undivided one-fifth interest in said lands, subject to the interest of Susan Reading as widow of William Reading, deceased. The second count is for partition and sale of the land.

The answer of the appellants admits the relationship of the plaintiff and defendants to William Reading; the execution and recording of the deeds, and denies all other averments. It avers that William Reading died testate, having executed his will and said four deeds contemporaneously as one transaction, on April 24, 1913. The will is pleaded in the answer, and it is further aver-

red that, by the terms of paragraph five thereof, the testator, by reference to said deeds, made them part and parcel of said will and did thereby intend to and did will and devise to the several grantees in said deeds respectively the property in each of said deeds described. The answer specifies the several tracts so intended to be devised to each of the said four defendants, subject to the life estate of Susan Reading. It further avers that the scrivener, in writing said deeds, instead of writing the reservation, "subject to a life estate in grantors herein," as was intended, erroneously and by mistake wrote in each of said deeds, this clause: "This deed is made in lieu of will and is good and valid only after the death of the parties of the first part," thinking and believing at the time that he was thereby reserving to the grantors a life estate in said lands; that the scrivener advised the grantors at the time that at their death the remainder would vest absolutely in the grantees, according to the purpose and intention of the grantors; that said deeds were delivered in the lifetime of William Reading with the intent and purpose aforesaid. The prayer is to reform the deeds and that the grantees shall take and be vested with a fee simple title in the property in each of said deeds respectively described, and for general relief. The answer to the second count is a general denial.

Mr. Reading lived in the village of Curryville in Pike County, near his farm, which was partly in Pike and partly in Ralls County. There were no lawyers in the village, but Mr. Reading had long known the local banker, Mr. J. W. Hawkins. In April, 1913, he asked Mr. Hawkins if he could write deeds and draw a will. Hawkins thought he could. Mr. Reading told him he wanted deeds made to his sons and daughters and how he intended to have his will drawn, giving him all the details. Hawkins prepared the deeds and will and, a day or so thereafter, took them to Mr. Reading. Reading and his wife executed and acknowledged the deeds before Hawkins, who was a notary, and then, at the same time and place, Reading executed the will, which, after providing for the pay-

ment of the testator's debts, devised all his property to his wife during her life, and $2500 to the plaintiff, his granddaughter, payable after the death of the testator and his wife. The fifth clause reads:

"I have made, in lieu of will, deeds to my lands, delivering said deeds to my children, as they are written, subject to provisions written in the body of said deeds, making them good and valid only after the death of the said William and Susan Reading, the parties of the first part thereto. However, any improvements the said party of the second part in said deeds mentioned, may desire to make at the expense of said party of the second part, is hereby allowed for their use and benefit, and each and everyone of the said party of the second part may cultivate, pasture, and otherwise use such lands as in said deeds mentioned after the death of the testator, as long as the said Susan Reading shall live, provided however, that each one of the said parties of the second part shall pay to said Susan Reading, their mother, such sums or rentals, annually, as she and they may agree upon, for her support, benefit, use, maintenance and comfort of life; so that the personal property found under this will, and at my death, shall not be lessened nor diminished, at the time of her death."

The plaintiff testified that her grandfather was ninety years of age at his death; that on the second day after the funeral, Mr. Hawkins carried her grandfather's box containing his private papers from the bank to the house of her aunt, Mrs. Shannon, where Mr. Reading had lived. Hawkins asked for the key. Grandmother said it was in grandfather's trousers' pocket. They got the key and Hawkins unlocked the box. The appellants were present. Hawkins took out the envelope with the will and four deeds in it and he read the will and the deeds. There were other papers in the box. Grandmother said they were all deeds and, I think, some insurance policies, and possibly some tax receipts. I don't know whether they were in the box or not. Mr. Hawkins handed the will and four deeds to my Uncle George.

The four deeds were read in evidence. They were warranty deeds, each containing the clause above mentioned. The will was also read in evidence, together with the probate thereof.

On the part of the appellants, the evidence showed that about the year 1891 Mr. Reading bought a tract of seventy acres adjoining the village of Curryville, paying therefor $2100, and had it deeded to his daughter, now deceased, the plaintiff's mother. Shortly after the execution of the deeds and will the appellants each took possession of the tracts respectively conveyed and made improvements thereon, outbuildings, repairing, fences and the like, paying the taxes and rent to their father to the time of his death.

Mr. Hawkins testified that he wrote the deeds and will at Mr. Reading's request and they were all executed at the same time; that when he wrote the clause in each deed, "This deed is made in lieu of will and is good and valid only after the death of the parties of the first part," he intended and thought that it reserved a life estate in the grantor, leaving the remainder interest over to the grantees in the deed. This was stricken out on the motion of the plaintiff. He further testified that at the time Reading asked him to write the deeds he said his purpose and intention was to make deeds to his land and then to make a will with regard to the remainder of his personal and other property.

Defendants offered to show by the witness that Mr. Reading told him he wanted witness to write the deeds reserving a life estate in the property for himself and wife and the remainder interest he wanted to go to the respective parties named in each deed; that at the time he wrote that clause in the deeds he thought he was simply reserving a life estate in the grantors and that it was a mistake on his part, and not Mr. Reading's mistake, which caused him to write the deeds that way, and that he told Mr. Reading that was the effect of this clause in the deeds. These offers were excluded by the court. Witness further testified that after the deeds and will.

were executed, Mr. Reading turned them over to him, saying: "I want you to take them and keep them. I put these in your custody for fear I forget to hand them to the children myself; they are in your care and keeping and at my death I request that you give to each of the children the deeds so made to them." I put them in the same envelope and sealed them up together and they were never unsealed until after his death. They were kept in the bank box in Curryville, the one he kept at the bank. He only kept a few old papers, possibly. a deed back there, possibly fifty or sixty years ago, and there was nothing else in that box now when I shut and locked it and handed it back; nothing in it but a $2000 time deposit and these deeds. I was president and cashier of that bank down to his death. That box was always there. He never put his hand in the box himself. He always brought the key and we unlocked it, myself or my son one, and handed him whatever paper he wanted, and put it back. I notified John Reading or George Reading after his death, they were the executors, that whenever they were ready I would take the box down to the house and open it there in the presence of all of them. This was his box. I put the will and deeds in it at his request. He kept the key all the time till his death. I kept the box at the bank for him like I would for any other customer. Reading had access to it; he always called for it when he wanted it; he never went in the vault in his life that I know of. His eyesight was bad. Sometimes when we got the box for him he couldn't see well enough to unlock it. "Q. And if he would come there and ask you, you would have given him that will and those four deeds, you would have given them to him? A. Well, I would have to study on that, Mr. Hostetter; I would have to have witnesses that he came there and demanded it of me, because when he handed them to me, there were several present, and both agreed that I should —he and his wife were present—and they both agreed that I should keep them."

The facts in this case are practically conceded. William Reading and his wife had been living for some years with their daughter, Mrs. Shannon, in the village of Curryville. He owned about seven hundred acres of land lying near the village. He had, in the year 1891, bought a tract of seventy acres adjoining the village for a married daughter, the mother of plaintiff, before plaintiff was born. This mother had since died, leaving plaintiff her only child, who was twenty-six years of age at the time of the trial. In April, 1913, when Mr. Reading was eighty years of age, he concluded to set his house in order and make a settlement of his property. There was no lawyer in the village, but he thought his old friend, the banker, Mr. Hawkins, could attend to his business, so he asked Mr. Hawkins if he could write a will and some deeds. Mr. Hawkins, like many another layman, felt equal to the task, and thereby hangs this tale. It is quite evident that Mr. Reading desired to give the plaintiff $2500, payable after the death of himself and his wife, and to parcel his land among his surviving sons and daughters, reserving the land during the life of himself and wife. It is also evident that it was understood the part each of the four children was to receive, and that they should severally take possession of his or her particular tract, paying rent therefor, with the right to make improvements, which should inure to each one's benefit. This is evidenced by paragraph five of the will, though obscurely expressed. It contemplated a quasi-ownership during the lifetime of the father and mother and complete ownership at their death. The deeds and the will were executed contemporaneously and placed in escrow with Mr. Hawkins, who put them in a sealed envelope and locked them in Mr. Reading's box at the bank. They remained in this box until after the funeral, the seal of the envelope never having been broken. On the second day after the funeral, Mrs. White, the plaintiff, and her two uncles, went to the bank. At their request, Mr. Hawkins took the box from the vault and they all went to the residence of Mrs. Shannon, where, after

getting Mr. Reading's key, Hawkins opened the box, broke the seal of the envelope, took out the four deeds and the will and read them in the presence of the parties to this action.

I. The circumstances considered, can there be any reasonable doubt that the deeds taken by Mr. Hawkins out of this sealed envelope, in the presence of all the parties to this action, are the identical deeds executed contemporaneously with and referred to **Will: Incorporating Deeds by Reference.** in the will? It is true that by their terms they are inoperative and testamentary, being valid only after the death of the grantors (Aldridge v. Aldridge, 202 Mo. 565; Goodale v. Evans, 263 Mo. 219; Terry v. Glover, 235 Mo. 545, (4); Coles v. Belford, 232 S. W. 728); but, being referred to, they are incorporated in and become operative as a part of the will itself. Ordinarily, contemporaneous instruments relating to the same transactions must be read together. [Realty Co. v. Geren, 185 Mo. App. 440, 459.]

In Harvey v. Chouteau, 14 Mo. 587, 596, RYLAND, J., quoting from Barnes v. Crowe, 1 Ves. Jr., 486, said:

"In the case of Barnes v. Crowe above cited, Lord Commissioner EYRE said 'the testator had inseparably annexed codicil to the will, not by wafer or wrapper, but by internal annexation.' I cannot see why the reference to the olographic will in the case before us, mentioned in the codicil, is not as strong and as satisfactory as physical annexation.

"In the case of Beal v. Cunningham, 3 B. Monroe, 390, the Court of Appeals of Kentucky decided, 'that a codicil is a part of the will to which it is attached, or refers, and must be taken and construed together as one will—one testament.'

"Here then, is a very respectable authority, that 'reference' is sufficient. I confess I see no good reason why it should not be. In cases like the present, the question of identity may sometimes arise. 'Is this the will referred to?' But this can always be settled by the

facts in proof.    I am therefore free to declare that I can see no legitimate reason, why a properly attested codicil may not draw down to it, a previous made though unattested will, to which the codicil refers, upon its face, though not annexed by wafers or any other mode, physically."

In Waldermeyer v. Loebig, 222 Mo. 540, 552, GANTT, J., said:

"It is familiar law that where one deed or instrument refers to another, the instrument or deed referred to becomes thereby part and parcel of the former instrument."

In Chambers v. McDaniel, 28 N. C. 226, the headnote reads:

"If a testator in his will refers expressly to another paper, and the will is duly executed and attested, that paper, whether attested or not, makes part of the will; but the instrument referred to must be so described as to manifest distinctly what the paper is that is meant to be incorporated; and the reference must be to a paper already written, and not to one to be written subsequently to the date of the will."

In 40 Cyc. 1094, it is said:

"8. If a properly executed will incorporates in itself by reference any document or paper not so executed, whether it be in form of a will or codicil, or of a deed or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will.  It is not essential that the paper referred to be itself a dispositive instrument.  However, it is well settled that, in order that a paper may be incorporated in a will by reference, it must be referred to in the will as existing, and it must in fact be in existence at the time of the execution of the will.  And the will must clearly and definitely describe the papers intended to be incorporated, so that no room for doubt can exist as to what papers were meant.  The burden of proving the identity of the paper alleged to be incorporated by

reference is upon the party claiming that it was so incorporated. While parol evidence is necessarily admissible to prove whether there is or is not in existence at the testator's death any such instrument as is referred to in the will, and may be received to effect identification where the reference in the will is such as to make the paper referred to capable of identification, yet it is not admissible to show what paper was meant when the uncertainty and ambiguity as to the paper referred to is patent upon the face of the will.''

See also Newton v. Seamen's Friend Soc., 130 Mass. 91, 39 Am. Rep. 433; Shulsky v. Shulsky, 98 Kan. 69, 157 Pac. 407; Watson v. Hinson, 162 N. C. 72 (5); Fickle v. Snepp, 97 Ind. 289, 291; In re Shillaber, 74 Cal. 144; Mortgage Trust Co. v. Moore, 50 N. E. (Ind.) 72; Bryan's Appeal, 77 Conn. 240, 68 L. R. A. 353 and annotations; 28 R. C. L. 112; 1 Woerner's Am. Law of Administration (2 Ed.), sec. 222, p. 510.

It was not necessary that the deeds should have been presented to the court and formally and expressly certified as probated. [Estate of Willey, 128 Cal. 1, 56 Pac. 550, 60 Pac. 471; 40 Cyc. 1228, c. (3).] The proof of the will sets up and establishes the paper referred to as a portion of the will itself, by force of the reference and the consequent incorporation. [St. John's Parish v. Bostwick, 8 App. D. C. 452, cited in notes to Bryan's Appeal, 68 L. R. A. col. 1, p. 361.]

There cannot be the slightest doubt about the identity of these deeds. They were in existence at the time the will was executed. They were sealed up in the envelope with the will and kept there until the seal was broken after the testator's death. Collectively, they conveyed the testator's land to his children, subject to the identical provision recited in the will. The will identified them. They were ear-marked. No other deeds have been found conveying any of the testator's land. They are therefore to be regarded as a part of and read into the will. [Allen v. Maddock, 11 Moore's P. C. C.

427; Fesler v. Simpson, 58 Ind. 83; Fickle v. Snepp, 97 Ind. 289, and other citations in notes to Bryan's Appeal, 68 L. R. A. 373.]

The additional facts that the testator put the grantees into possession of the several tracts described in the deeds and that the will provides that improvements made by each grantee will inure to his or her own benefit, and that such possession continued to the time of the testator's death, point unerringly to a definite understanding of the property settlement so made by the testator and accepted by the appellants. Reading the deeds as parts of the will, it is clear therefore that they became operative on the probate thereof, and vested the titles accordingly in appellants as beneficiaries under the will.

II. In view of this conclusion, other questions relative to the exclusion of evidence offered by appellants drop out of the case and need not be considered. The deeds being incorporated in the will were necessarily testamentary in their nature, hence not subject to reformation. If they had not been referred to in the will, the evidence excluded tended to show that the deeds as drawn failed to express the grantor's purpose to reserve a life estate. [Corrigan v. Tiernay, 100 Mo. 276, 281; Bramhall v. Bramhall, 216 S. W. (Mo.) 766, 769; Williamson v. Brown, 195 Mo. 313, 331; Brown v. Tuscoff, 235 Mo. 449.] In that case they would not have been mere gratuities. There was a meritorious consideration. They were part and parcel of a property settlement. While a court of equity will not undertake to enforce a mere gratuity, yet where there is a meritorious consideration a court of equity will take cognizance of the mistake and correct it. [Partridge v. Partridge, 220 Mo. 321, 325.]

For the reasons stated in paragraph one of this opinion, the judgment is reversed and the cause remanded, with directions to enter judgment investing each of

the appellants with title in fee to the tracts severally devised to each of them as described in their respective deeds, subject to the life estate of Susan Reading. All concur.